IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 18, 2007

## STATE OF TENNESSEE v. DELMAR K. REED, a.k.a. DELMA K. REED

**Direct Appeal from the Criminal Court for Davidson County
No. 2006-B-1757    Steve Dozier, Judge**

**No. M2007-00259-CCA-R3-CD - Filed October 7, 2008**

The defendant, Delmar K. Reed, was found guilty by a jury of ten counts of harassment (Class A misdemeanor), one count of attempted aggravated burglary (Class D felony), one count of vandalism over $1000 (Class D felony), one count of vandalism under $500 (Class A misdemeanor), and one count of setting fire to personal property (Class E felony). He was sentenced to an effective sentence of nineteen years as a Range II, multiple offender. On appeal, he argues that the evidence is insufficient to support his convictions; the trial court improperly denied his motion for a mistrial; and his convictions for harassment should have been merged into two convictions. After careful review, we conclude that no error exists and affirm the judgments from the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which THOMAS T. WOODALL and J.C. MCLIN, JJ., joined.

Dwight E. Scott, Nashville, Tennessee (on appeal); Ross E. Alderman, District Public Defender; Clark B. Thornton and Kevin McGee, Assistant Public Defenders (at trial), for the appellant, Delmar K. Reed, a.k.a. Delma K. Reed.

Robert E. Cooper, Jr., Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Pamela S. Anderson and Rachel Sobrero, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

The victim testified that she was married to the defendant and that they went through many periods of separation. She said that they had an abusive relationship in which he was physically and

verbally violent toward her. The defendant made many threatening phone calls to the victim both at home and at her place of employment, including threats that he would hurt or kill her and that the police could not stop or catch him. Many of their arguments revolved around the victim's automobile. She also testified to an incident when her son heard sounds outside their window. During this incident, she looked out the window and saw the defendant "standing out in the dark throwing [small rocks] up at the window with a – just a white wife-beater shirt on." The defendant moved for a mistrial at the characterization of the shirt as a "wife-beater."

The victim testified that on September 8, 2005, the defendant repeatedly called at her work and threatened to kill her for calling the police. He also told her that he would "burn [her] ass out" and that she would have nowhere to live and nothing to drive. That evening she received a telephone call when the caller said, "Bitch . . . lemme show you what I'm talking about." She looked out the window and saw her car with a grey car parked nearby. Moments later, she heard an explosion, looked out the window, and saw her car "engulfed in flames" with the defendant standing nearby. The victim testified that the defendant called her while the police were filling out a report and said, "Bitch I told you what I could do."

The defendant continued to call the victim and tell her that he was not finished with her or her children. After the defendant's bond hearing, he called her again and told her "Bitch, you done messed up now." She testified that the defendant showed no remorse for his actions and that the experience was horrifying for her.

Several witnesses testified for the defendant at trial. One friend testified that the defendant had stayed with her and her aunt in Murfreesboro during the time the victim's car was burned. She also testified that she drove a grey car at the time the defendant stayed with her. Several witnesses testified that they lived in the victim's apartment complex during the time the car was burned and said that they saw a black man run from the scene rather than drive away from the scene.

Following the jury trial on July 10 and 11, 2006, the defendant was convicted on all counts. The trial court conducted a sentencing hearing and, on November 14, 2006, entered an order that imposed an effective sentence of nineteen years as a Range II, multiple offender.

Analysis

The defendant raises three issues on appeal: (1) the evidence was insufficient to support the convictions; (2) the trial court should have declared a mistrial; and (3) the ten convictions for harassment should have been merged into two convictions.

First, the defendant argues that the evidence was insufficient to support his convictions for vandalism, setting fire to the personal property of another, and harassment because he contends the victim's testimony was contradicted by that of other witnesses. When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct

evidence, circumstantial evidence or a combination of direct and circumstantial evidence. *State v. Brewer*, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. *Id.* In *State v. Grace*, the Tennessee supreme court stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

The defendant's argument regarding his convictions for vandalism and setting fire to personal property amount to an attack on the credibility of the victim's testimony. The State argues that this is not appropriate on an appeal to this court because questions about the credibility of witnesses, the weight and value of the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and this court should not reweigh or reevaluate the evidence. We agree.

The victim's testimony at trial reflected that the defendant made telephone calls to the victim threatening to "burn [her] ass out" so that she would have nowhere to live and nothing to drive. That evening, the victim's car was burned, and she observed the defendant standing near the burning vehicle. In addition to the car being destroyed, the victim also lost many compact discs and a camcorder in the fire. The victim testified that the defendant caused damage to her apartment door on a separate occasion. The victim's testimony supports the defendant's convictions. The jury accredited the testimony of the victim and, as previously stated, the jury's guilty verdict resolves all conflicts in the evidence in the favor of the prosecution. The defendant is not entitled to relief on this issue.

Next, the defendant challenges the sufficiency of his convictions for harassment in Count nine of the indictment. He argues that the proof at trial was insufficient to support the charge of harassment that occurred on September 12, 2005, because the victim misstated the date during her testimony.

The indictment charged the defendant with intentionally threatening by telephone to take unlawful action against the victim, thereby annoying or alarming her on September 12, 2005. During the trial, the State asked the victim about the telephone call she received from the defendant on September 12, 2005. The victim said she received a call from the defendant on that date but went on to say, "July (sic) the twelfth he called – I don't know if this is the same incidence, that – incidence that you're referring to, that I've stated – but he called and told me that he wasn't finished."

A police officer also testified about the incident on September 12, 2005, and said that he responded to a call at the victim's apartment and found her in a very frightened state. He further testified that the defendant called the victim while the officer was in the victim's home and that phone call left the victim "very scared."

Based on the record, we can conclude that the evidence was sufficient to support the finding of guilt. The defendant refers to *State v. Moss,* 662 S.W.2d 590, 592 (Tenn. 1984), in which our supreme court adopted the test for determining whether a variance between the indictment and the proof at trial is fatal to the charge. The test in *Moss* states that:

> unless substantial rights of the defendant are affected by a variance, he has suffered no harm, and a variance does not prejudice the defendant's substantial rights (1) if the indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and not be misled or surprised at trial, and (2) if the variance is not such that it will present a danger that the defendant may be prosecuted a second time for the same offense; all other variances must be considered to be harmless error.

*Id.*

Here, the variance is neither material nor prejudicial. The victim testified that the threatening telephone call was made on September 12, 2005, and the officer confirmed that he was present when the call was received by the victim. The victim was apparently confused when she mentioned the date of July 12, but her confusion was neither material nor prejudicial. To the extent that her mistake was a variance, it was harmless error and not fatal.

Next, the defendant contends that the trial court erred in denying his motion for a mistrial after the victim described the shirt the defendant wore during one incident as a "wife-beater shirt."

He argues that the terminology was highly prejudicial because much of the victim's testimony centered around the defendant's physical abuse of the victim.

The decision to grant a mistrial lies within the trial court's discretion, and this court will defer to the trial court's decision absent an abuse of discretion. *State v. Huskey*, 66 S.W.3d 905, 914 (Tenn. Crim. App. 2001). A trial court should grant a mistrial only when it is of "manifest necessity." *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996).

Here, the victim was testifying about the events that occurred on September 7, 2005, when she heard a sound like rocks being thrown at the windows of her apartment. She said that she looked out the window and saw the defendant throwing rocks up at the window with "just a white wife-beater shirt on." The defendant immediately moved for a mistrial. The trial court did not grant a mistrial but, instead, stated that the type of shirt the defendant wore and how the victim described it "has nothing whatsoever to do to whether these ladies and gentlemen of the Jury can adequately decide . . . this case." The court further instructed the victim that she did not need to make side comments and told the jury to disregard the statement about the type of shirt the defendant was wearing. The State argues, and we agree, that the trial court's instruction was sufficient to cure any prejudice that the victim's comment had on the defendant's case. Therefore, the trial court did not abuse its discretion and the defendant is not entitled to any relief on this issue.

Next, the defendant argues that the trial court should have merged the defendant's ten convictions for harassment into two convictions. Specifically, he contends that harassment requires

continuous and repetitious conduct. However, because harassment, as charged in seven of the ten counts, does not require repetition and because substantial periods of time passed between the conduct alleged in the other three counts, a merger was unnecessary. The flaw in the defendant's argument is that, once a harassment has been established, the perpetrator of the harassment would have a free pass to continue the conduct if law enforcement is unable to continue to charge for the offensive conduct. We do not set forth a bright-line rule that each time a harassment occurs that all conduct following the initial act of harassment becomes a chargeable offense. Each offensive act should be reviewed on a case-by-case basis to develop whether the offensive conduct is part of the same offense or is a separate crime in and of itself.

Seven of the ten counts of the indictment cite language of Tennessee Code Annotated section 39-17-308(a)(1) which states, "A person commits an offense who intentionally [ ] [t]hreatens, by telephone, in writing, or by electronic communication, including electronic mail or internet services, to take action known to be unlawful against any person, and by this action knowingly annoys or alarms the recipient[.]" There is no requirement of repetition in this part of the statute. The defendant cites to subsection (a)(2) to support his argument because that subsection requires that the telephone calls be made in a repetitious manner. The three remaining harassment counts utilized language from Tennessee Code Annotated section 39-17-308(a)(2).

In order to sustain the three separate convictions for harassment, a break in the continuous course of conduct was required. *See State v. Vigil*, 65 S.W.3d 26, 35 (Tenn. Crim. App. 2001). The trial court concluded that the repetitious harassments were separated by sufficient periods of time.

The conduct to support Count two of the indictment occurred on September 6, 2005. Based on the language from subsection (a)(2), the next count, Count thirteen of the indictment, occurred nine days later on September 15, 2005. The conduct that gave rise to Count fourteen occurred three months later on December 8, 2005. We conclude that the passage of time between the three counts was a sufficient break in the conduct to justify three separate convictions in addition to the seven convictions for individual incidents of harassment. Therefore, the defendant is not entitled to relief on this issue.

Conclusion

Based on the foregoing and the record as a whole, we affirm the judgments from the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE