STATE of Tennessee, Appellee,

v.

Thomas WILLIAMS, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

Feb. 23, 1996.

No Permission to Appeal Applied for to the Supreme Court.

Ricky L. Jenkins, Sparta, for Appellant, on appeal.

Joe L. Finley, Jr., Asst. Public Defender, Cookeville, for Appellant, at trial.

Charles W. Burson, Attorney General and Reporter, Ellen H. Pollack, Assistant Attorney General, Criminal Justice Division, Nashville, William E. Gibson, District Attorney General, Anthony Craighead, John A. Moore, Asst. Dist. Attorneys General, Cookeville, for Appellee.

## OPINION

SUMMERS, Judge.

A jury convicted the appellant, Thomas Williams, of both forgery and passing a forged instrument and imposed a $405 fine. Sentenced as a Range III persistent offender, the appellant received concurrent six-year sentences. In this appeal, he raises eight issues as follows:

1. Whether the jury was exposed to such extraneous, prejudicial, and improper outside influence as to deny him his right to a fair and impartial jury;

2. Whether the trial court erred by denying his right to cross-examine the state's witnesses;

3. Whether the trial court erred by denying him the opportunity to impeach a state's witness with extrinsic evidence;

4. Whether the trial court erred in denying the defendant's motion for mistrial after the state's witness stated that the defendant had previously given her bad checks;

5. Whether he was denied effective assistance of counsel due to counsel's failure to request funds for a handwriting expert;

6. Whether he was denied effective assistance of counsel in counsel's failure to object to the state's questioning of him as to his prior convictions;

7. Whether he was denied effective assistance of counsel in counsel's failure to obtain a ruling on the state's right to question him concerning his prior convictions prior to his decision to testify; and

8. Whether the state violated his right to due process and a fair trial by cross-examining him concerning his prior convictions without obtaining a prior ruling from the court outside the presence of the jury.

Following our review, we affirm the convictions.

The testimony at trial revealed that the appellant had worked for Pat Jernigan as a farm hand and was paid each week with a personal check from Jernigan. Routinely, the appellant cashed his checks at Dixie Food Mart. Grace Blanton, owner of the store, had an understanding with Jernigan, a long time customer, that he would "stand good for" the checks she cashed for the appellant. Ms. Blanton said she wanted this assurance because the appellant had previously given her "bad checks." On March 16, 1992, the appellant presented a check to Donald Tompkins, an employee of the store, to pay for gasoline and groceries. After receiving approval from Ms. Blanton, Tompkins tendered the remaining cash of the $135.00 check to the appellant. Two or three weeks later the check was returned to Dixie Food Mart stamped "forged."

Pat Jernigan explained that he and the appellant had been childhood friends and that the appellant had worked for him at his dairy farm. Jernigan would always pay the appellant by check for seven days work in advance. On this particular week, Jernigan fired the appellant for failing to show up for work on Saturday or Sunday. A few weeks later Jernigan received his cancelled checks from the bank and immediately recognized that a check to the appellant was not in his handwriting. Jernigan explained that he often left his checkbook on the dash of his truck and would not balance his checkbook until the end of the month when he received his statement. Jernigan said that he had neither given the appellant permission to take a blank check nor had he given him permission to sign Jernigan's name to a check in any amount.

During cross-examination of Jernigan, defense counsel inquired into the underlying basis for a fight with the appellant which

resulted in an assault conviction against Jernigan. Jernigan explained that when the appellant did not show up for work on Sunday, he went to the appellant's home and a fight ensued. Counsel further questioned Jernigan as to whether he had used the appellant's name to obtain prescription medicine. The state's objection was sustained.

The appellant testified that Jernigan had given him the check in question that evening, after having told Jernigan earlier in the day that he needed some money. He said the check looked like every other check given to him by Jernigan. The appellant admitted that he passed the check at Dixie Food and that a fight later occurred between Jernigan and himself. On cross-examination, he said that he did not see Jernigan make the check out and insisted that he did not write the check. Finally, the state questioned the appellant regarding previous convictions for forgery, passing a forged instrument and grand larceny.

### I & IV

■ Because the appellant's first and fourth issues attack the trial court's denial of his motion for a mistrial, we combine them for review. In his first issue, he argues that a mistrial should have been declared because the jury heard extraneous, prejudicial information. Specifically, the appellant claims that during a break, Pat Jernigan approached defense counsel and asked him how he could believe that Jernigan had attempted to obtain prescription drugs using the appellant's name. Upon returning to the courtroom, counsel made the court aware of the incident and moved for a mistrial which was denied. The appellant also claims that during another recess, Jernigan referred to him as "scum" in the presence of jurors.

We find no proof in the record that the jurors heard or were affected by these statements. Therefore, we have no evidence with which to consider the viability of a mistrial on this basis. Further, based on the substance of the appellant's allegations, we do not find that such comments would likely have affected the jury verdict. This claim is without merit.

■ In his fourth issue, the appellant argues that a mistrial should have been declared due to the store owner's statement that appellant had given her "bad checks" in the past. The decision to grant a mistrial is within the sound discretion of the trial court and such decision will not be overturned absent an abuse of discretion. *State v. Jones*, 733 S.W.2d 517, 522 (Tenn.Crim.App. 1987). A mistrial is usually appropriate in a criminal case only where there is a "manifest necessity." *Arnold v. State*, 563 S.W.2d 792, 794 (Tenn.Crim.App.1977). The purpose for declaring a mistrial is to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict. *Id.* The burden of establishing a "manifest necessity" lies with the appellant.

■ The witness' remark was in response to her acceptance of checks from the appellant. She had conditioned her approval of the checks on Jernigan's promise to stand good for them. The store manager had previously dealt with the appellant and had received "bad checks" from him. The trial judge gave an immediate curative instruction following this remark. Without evidence to the contrary, we must presume that the jury followed the instructions of the trial court. *State v. Vanzant*, 659 S.W.2d 816, 819 (Tenn. Crim.App.1983). Further, the term "bad checks" could have been interpreted as insufficient funds checks rather than forged instruments. Nonetheless, we do not find that it rose to the level of a "manifest necessity" requiring a mistrial. The appellant has failed to meet his burden.

### II & III

In appellant's second and third issues, he challenges the trial court's denial of counsel's attempt to inquire into the basis for the assault incident. He first claims that he was denied his right to cross-examine Pat Jernigan. Secondly, he claims the trial court should have permitted his counsel to impeach Jernigan through extrinsic evidence.

■ While the appellant correctly cites constitutional provisions guaranteeing the right to confront the state's witnesses against him, his attack here is misguided. Pat Jernigan, the appellant's employer, testi-

fied during the trial and was cross-examined by defense counsel. Thus, he was given the opportunity to confront and cross-examine this witness. However, the appellant now claims that because the trial court refused to allow questioning about Jernigan's use of appellant's name to obtain prescription drugs, he was denied his constitutional right. We disagree.

In this case, the owner and clerk of the store identified the appellant as the person who presented the check. Jernigan, whose name was forged and whose check was presented, testified that the check was not in his handwriting. The appellant explained that he hoped to show bias on the part of Jernigan based on the prescription drug incident. It appears he wanted the jury to believe that Jernigan brought this action to get back at him. We find that the trial judge properly sustained the state's objection. The appellant did not argue that he was permitted to sign Jernigan's name. Instead, he claimed that Jernigan gave him the check and that it looked like all other checks given him by Jernigan. His bias argument does not overcome the court's discretion in making the evidentiary ruling. This argument is without merit.

 The appellant also presents this same challenge in terms of the trial court's denial of the use of extrinsic evidence to impeach Jernigan pursuant to Tenn.R.Evid. 616. Rule 616 provides that "[a] party may offer evidence by cross-examination, extrinsic evidence, or both, that a witness is biased in favor of or prejudiced against a party or another witness." However, "[t]his opportunity to cross-examine is tempered and limited by Rule 402 of the Tennessee Rules of Evidence ... [n]o party may cross-examine a witness on matters that are irrelevant." *State v. Scott*, No. 01C01–9202–CR–00053, slip op. at 4, 1993 WL 31990 (Tenn.Crim.App. Feb. 11, 1993). As stated above, due to the appellant's position at trial, this cross-examination was irrelevant. Trial judges are empowered with great discretion regarding the trial process, including the scope of cross-examination. *Id.* at 5. That discretion will not be disturbed unless an abuse of discre-

tion is found. *Id.* Here, we find no abuse of discretion.

## V, VI & VII

Because issues five through seven challenge some aspect of counsel's performance, we combine them for review. Appellant claims that he was denied the effective assistance of counsel due to counsel's failure to: 1) request funds to provide him with a handwriting expert, 2) object to the state's questioning of him as to his prior convictions and 3) obtain a ruling on the state's right to question him concerning his prior convictions prior to his decision to testify.

 In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-prong analysis when an appellant claims that counsel's assistance was so defective so as to require a reversal. First, the appellant must show that counsel's performance was deficient and second, that the deficient performance prejudiced the appellant to the point that (s)he was deprived of a fair trial. *Id.* at 687, 104 S.Ct. at 2064. As to the first prong, to prove a deficient performance, the appellant must prove that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. at 2064–65. This evaluation must be accompanied by a strong presumption in the reviewing court that counsel's conduct falls within the wide range of acceptable professional assistance. *Id.* at 689, 104 S.Ct. at 2065. To meet the second prong, the appellant must prove that (s)he was prejudiced by showing that there was a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694, 104 S.Ct. at 2068.

In Tennessee, our Supreme Court held that the appropriate test for determining whether counsel provided effective assistance of counsel at trial is whether his or her performance was within the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn.1975).

 Appellant's first attack is that his appointed counsel failed to request funds for

a handwriting expert. The appellant acknowledges that the legislature has not provided for funds to employ an expert witness in non-capital cases. Tenn.Code Ann. § 40–14–207(b) (1990). Likewise, the state cites *State v. Harris,* 866 S.W.2d 583 (Tenn.Crim. App.1992) for that same proposition. However, in *State v. Edwards,* 868 S.W.2d 682 (Tenn.Crim.App.1993), this Court held that in determining whether due process requires authorization of an expert in a non-capital case, the test is whether the indigent defendant has demonstrated before trial the necessity of expert assistance upon an issue likely to be significant at trial. *Id.* at 697. "The burden is upon the defendant to establish that the expert would be of material assistance in the establishment of his defense theory." *Id.*

Here, no such demonstration was made prior to trial. The state argues that a non-expert could recognize the distinct similarity between the letters, "h," "s," "w," and "a." Having viewed the evidence, we agree that some of the letters are substantially similar. The appellant argues that because he was not afforded the assistance of a handwriting expert, the jury was left with a credibility determination between himself and Jernigan. He also insists that a handwriting analysis would have been determinative of his case. We disagree. While a handwriting expert would have rendered his or her opinion as to the similarities in the handwriting, such a result would not have been deemed conclusive. Instead, this testimony would be another variable for the jury to consider in its credibility determinations. The appellant has failed to meet his burden.

Therefore, even if the attorney should have moved for a determination of whether funds were necessary, our Supreme Court has found no abuse of discretion where the appellant's request is "accompanied by little more than undeveloped assertions that the services were needed to attempt to counter the State's proof." *State v. Cazes,* 875 S.W.2d 253, 261 (Tenn.1994). Thus, the appellant has failed to make a showing of necessity and

demonstrate, in this ineffective assistance claim, how he was prejudiced. This claim is without merit.

▇▇▇ In his next basis, the appellant claims that counsel was ineffective for failing to object to the state's questioning of him regarding his prior convictions. Closely tied to this issue is his claim that counsel was ineffective for failing to obtain a ruling from the trial judge concerning his prior convictions.

In *State v. Farmer,* 841 S.W.2d 837 (Tenn. Crim.App.1992), this Court found that the state may use a prior adult conviction to impeach an accused's testimony in a criminal prosecution if:

(a) the conviction was for a crime that is punishable by death or imprisonment in excess of one (1) year or a misdemeanor involving dishonesty or false statement, Tenn.R.Evid. 609(a)(2),

(b) less than ten (10) years had elapsed between the date the accused was released from confinement and the commencement of the prosecution, Tenn.R.Evid. 609(b),

(c) the State gives reasonable written notice of the particular conviction or convictions it intends to use to impeach the accused prior to trial. Tenn.R.Evid. 609(a)(3), and

(d) the trial court finds that the probative value of the felony or misdemeanor on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues. Tenn.R.Evid. 609(a)(3).

*Id.* at 839. *See also State v. Finch,* No. 02C01–9309–CC–00224, 1995 WL 334350 (Tenn.Crim.App. June 7, 1995).

Here, as in *Farmer,* the first three elements can be proven by the record.[1] The appellant makes a brief argument that he should not have been asked about these convictions because his character had not been brought into issue. However, he is ignoring his testimony that he denied forging the check by saying that it looked like every

---

1. The technical record includes the state's Notice of Intent to Impeach Defendant by Evidence of Prior Convictions filed January 5, 1993. Included in the notice are prior convictions for Passing a Forged Instrument—February 1991; Forgery—February 1991; and Grand Larceny—February 1988.

other check he had received from Jernigan. These prior convictions were properly admitted during cross-examination on the issue of truthfulness.

 The remainder of our review within this claim will focus on whether counsel was ineffective in failing to require the trial court to conduct the balancing test of Tenn.R.Evid. 609(a)(3). The record is completely devoid of evidence that any inquiry was done into the probative value of these convictions. No pretrial motion was made nor was any type of hearing conducted prior to the appellant's taking the stand. "The purpose of determining the admissibility of such evidence prior to the accused's testimony is to allow a defendant to make an informed judgment as to whether to testify." *State v. Williams*, No. 02C01–9209–CR–00220, slip op. at 24, 1994 WL 553420 (Tenn. Crim.App. Oct. 12, 1994). We have no indication that the appellant was afforded the opportunity to decide whether or not to testify or whether he was informed of the potential use of these convictions. However, under an ineffective assistance of counsel claim, the appellant carries the burden of proof of showing prejudice. Only he and his attorney know what was discussed regarding his prior convictions and neither testified at the motion for new trial hearing. His bald assertion that he was denied that opportunity cannot be determined without presentation of some type of proof on his behalf. Therefore, we must find that he has failed to meet his burden.

### VIII

 Appellant's eighth issue is that the state violated his rights to due process and a fair trial when he was cross-examined concerning his prior convictions without a ruling from the trial court. As discussed above, we are similarly unable to find that the appellant has shown that counsel did or did not inform him of the state's intention to use those prior convictions for impeachment purposes. Without such evidence, we are unable to conclude that he was not so informed. Further, we cannot find that the state erred in questioning him regarding his prior convictions. This issue is without merit.

The judgment of the trial court is, in all respects, affirmed.

JONES, P.J., and TIPTON, J., concur.