# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

## JULY 1999 SESSION

FILED

January 25, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **JOHN V. WOODRUFF,** | _____* | No. 01C01-9811-CR-00449 ~~~~ **M1998-00695-CCA-R3-CD** |
| _____**Appellant,** | * | DAVIDSON COUNTY |
| **V.** | * | Hon. J. Randall Wyatt, Jr., Judge |
| **STATE OF TENNESSEE** | * | (Post-Conviction) |
| _____**Appellee.** | * | |

For Appellant

William A. Lane
3236 Dilton Mankin Road
Murfreesboro, TN  37127

For Appellee

Paul G. Summers
Attorney General and Reporter
425 Fifth Avenue North
Nashville, TN  37243-0493

Marvin E. Clements, Jr.
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN  37243-0493

OPINION FILED:

AFFIRMED

NORMA MCGEE OGLE, JUDGE

**OPINION**

The petitioner, John V. Woodruff, Jr., appeals the denial by the Davidson County Criminal Court of his petition for post-conviction relief on October 15, 1998. On appeal, the petitioner alleges that his counsel provided ineffective assistance due to counsel's failure to adequately advise him concerning his right to testify at his trial and in overriding the petitioner's desire to testify. Additionally, the petitioner asserts that counsel was ineffective in failing to ensure the redaction from evidence introduced at the petitioner's trial of a reference to the petitioner's parole status at the time of his offenses. Following a review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

## I. Factual Background

The petitioner was convicted in 1994 of first degree premeditated murder, first degree felony murder, especially aggravated robbery, and especially aggravated kidnapping. The petitioner's convictions resulted from his participation along with three other men in the robbery and strangulation of Derrick Grant at the Twelve Oaks Motel in Berry Hill, Tennessee, and the subsequent kidnapping and shooting of Mr. Grant's companion, Reba Benford. Pursuant to an investigation by the Nashville Metropolitan Police Department of the murders of Mr. Grant and Ms. Benford, the police interviewed the petitioner, who initially denied any knowledge of the murders. However, during a subsequent interview, the petitioner provided a statement detailing his involvement in the offenses, a statement which was later introduced at his trial. Following his convictions, the petitioner received two consecutive life sentences for the murder convictions and concurrent sentences of twenty years incarceration for the especially aggravated robbery conviction and twenty years incarceration for the especially aggravated kidnapping conviction.

On August 1, 1996, this court affirmed the petitioner's convictions and sentences. State v. Woodruff, No. 01C01-9507-CR-00217, 1996 WL 429167 (Tenn. Crim. App. at Nashville, August 1, 1996), perm. to appeal denied, (Tenn. 1997). Accordingly, on January 29, 1998, the petitioner filed the instant petition for

2

post-conviction relief in the Davidson County Criminal Court. Thereupon, the post-conviction court appointed counsel and conducted an evidentiary hearing on October 7, 1998.

At the post-conviction evidentiary hearing, the petitioner testified on his own behalf. First, he complained concerning his attorney's advice that he not testify at his trial. He could not recall any specific discussions with his attorney concerning the option of testifying but asserted generally that he did not always understand his attorney's explanations concerning the law applicable to his case. According to the petitioner, he was therefore forced to blindly follow his attorney's instructions.

Inconsistent with the above testimony, the petitioner also stated to the post-conviction court that, whenever he inquired concerning legal issues, his trial attorney answered his questions satisfactorily. Moreover, with respect to his decision to forego testifying at his trial, the petitioner conceded that, at the time of his trial, his criminal record included at least four prior felonies. He further conceded that the contents of his testimony at trial would have been identical to information contained in his statement to the police. He concluded that, at the time of his trial, "it didn't matter" to him whether he testified.

Second, the appellant maintained at the post-conviction evidentiary hearing that his attorney was responsible for the erroneous introduction at his trial of evidence concerning his parole status at the time of his offenses. He conceded that, following the erroneous introduction of this information at his trial, he agreed that a curative instruction by the trial court would remedy any potential prejudice. Nevertheless, he again asserted that he did not understand the proceedings and was blindly following his attorney's instructions.

Mark J. Fishburn, the petitioner's trial attorney and currently a judge in Davidson County, also testified at the hearing. He testified that, at the time of the petitioner's trial, he had been practicing criminal law for approximately fourteen

years. He had provided representation in approximately one thousand criminal cases and participated in sixty or seventy criminal jury trials. Approximately one half of these criminal jury trials involved homicides.

In the petitioner's case, Judge Fishburn spent approximately one hundred hours preparing for trial. His preparation included extensive discussions with the petitioner on at least eight or nine occasions concerning whether the petitioner would testify at trial. Judge Fishburn conceded that he advised the petitioner against testifying. He based his advice upon several factors: (1) the petitioner possessed an extensive criminal record of six prior felony convictions; (2) the State's introduction at trial of the petitioner's statement to the police communicated the petitioner's account of events to the jury; and (3) if the petitioner testified, he would be subject to cross-examination concerning inconsistencies between his account of events and other evidence introduced at trial. Nevertheless, Judge Fishburn testified that the final decision whether to testify at trial rested entirely with the petitioner. Specifically, Judge Fishburn recounted,

> We had lengthy discussions about the pros and cons. [Mr. Woodruff] wanted to testify first. We discussed why he wanted to testify. I gave him the - - kind of the opposing view and the consequences of him testifying. He still wanted to testify. The next time he chose not to. We went back and forth, He probably changed his opinion two or three times before . . . he finally decided what he wanted to do.

Indeed, Judge Fishburn noted that the petitioner

> was placed under oath [before the trial court] and questioned extensively [by Judge Fishburn] about his desire - - his willingness or desire to testify. And he clearly indicated that he chose not to after [our] many discussions.[1]

---

[1]We note in passing that, during cross-examination of the petitioner at the post-conviction evidentiary hearing, the prosecutor read to the petitioner the transcript of this colloquy between the petitioner and his trial counsel, which appeared to largely comply with the procedure set forth by our supreme court in Momon v. State, No. 03S01-9805-CR-00049, 1999 WL 1146746, at **6-7 (Tenn. at Knoxville, November 15, 1999)(renumbered No. E1996-00007-SC-R11-PC, 1999 Term). Moreover, at the conclusion of the post-conviction evidentiary hearing, the prosecutor asked that "the technical record and the transcripts be made an exhibit for the purpose of this hearing and returned to the Court of Appeals so they can rely on that, if they want." Tenn. App. § 40-30-208(b)(1997). However, the record before this court does not contain any transcripts of the trial proceedings, whether relating to the petitioner's decision to forego testifying at his trial or the jury's exposure to a reference to the petitioner's parole status. Although this court may take judicial notice of court records in an earlier proceeding of the same case, Delbridge v. State, 742 S.W.2d 266, 267 (Tenn.1987), the petitioner has the obligation of ensuring that relevant portions of the record from the original case are included in the record on appeal. Tenn. R. App. P. 24; Morgan v. State, No. 03C01-9611-CR-00404, 1999 WL 76108, at *3 (Tenn. Crim. App. at Knoxville), perm. to appeal denied, (Tenn. 1999).

Finally, Judge Fishburn observed that the petitioner appeared to fully understand their discussions concerning his option of testifying at trial.

Judge Fishburn did concede that the jury was mistakenly informed of the petitioner's parole status at the time of the present offenses. During the petitioner's trial, the prosecutor played for the jury a tape cassette recording of the petitioner's statement to the police. Apparently in order to assist the jury in listening to the recording, the prosecutor also provided a typed transcript of the recording. While the prosecutor was playing the recording, the parties noticed that a reference to the petitioner's parole status, while properly redacted from the recording, had been included in the transcript.

The trial court immediately halted proceedings and discussed with the parties, outside the presence of the jury, potential remedies. Judge Fishburn also discussed the matter with the petitioner "at length." Ultimately, the petitioner agreed to a curative instruction by the trial court. At the post-conviction evidentiary hearing, Judge Fishburn further noted that, prior to the playing of the recording and the jury's exposure to the transcript, the trial court had already instructed the jury that it was to consider as evidence the tape cassette recording rather than the typed transcript.

In order to place the error in context, Judge Fishburn also explained events occurring prior to trial. He recalled that the prosecutor provided to him a typed transcript of the petitioner's statement to the police. Upon reviewing the transcript, Judge Fishburn filed a motion to redact certain portions of the statement and met with the prosecutor four or five times to discuss this issue. Ultimately, both parties reached an agreement concerning which portions should be redacted. In particular, the parties agreed that the State would omit any reference to the petitioner's parole status. However, the transcript was retyped three or four times due to "fine-tuning." Judge Fishburn recounted that

> [The reference to the petitioner's parole status] was
> removed on one of the drafts and then there was some
> other minor modifications that were made subsequent to
> that. [The prosecutor's] secretary was retyping it. And

5

> somehow or another, that parole statement got back in.
> And when we - - when that was played to the jury, I don't
> think any of us had realized that until we actually got to
> that page. It was like the last page. It was not on the
> tape, itself, but it did reappear in the transcript.

## II. Analysis

Again, the sole issue in this appeal is whether the petitioner received ineffective assistance of counsel during his trial proceedings. We initially note that the petitioner bears the burden in these post-conviction proceedings of proving any factual allegations in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f)(1997). Moreover, on appeal, the findings of fact of the post-conviction court are afforded the weight of a jury verdict and are conclusive unless the evidence in the record preponderates against those findings. Henley v. State, 960 S.W.2d 572, 578-579 (Tenn. 1997); Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). In particular, this court will not reassess the credibility of witnesses at the post-conviction evidentiary hearing or the weight and value to be given their testimony. State v. Burns, No. 02S01-9806-CC-00058, 1999 WL 1006315, at *5 (Tenn. at Jackson, November 8, 1999)(renumbered No. W1996-00004-SC-R11CD, 1999 Term)(publication pending). In contrast, we review de novo the post-conviction court's application of the law and the court's determination of mixed questions of law and fact. Id. at *6. Our supreme court has recently observed that the issue of ineffective assistance of counsel is a mixed question of law and fact. Id. Accordingly, our review of this issue is de novo.

In order to establish ineffective assistance of counsel in contravention of the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution, a petitioner must demonstrate that (1) his counsel's representation was deficient, and that (2) the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687-697, 104 S.Ct. 2052, 2064-2069 (1984). See also Henley, 960 S.W.2d at 579-580; Powers v. State, 942 S.W.2d 551, 557 (Tenn. Code. Ann. 1996). Reviewing courts need not address these components in any particular order or even address both if the petitioner fails to

6

meet his burden with respect to one. Henley, 960 S.W.2d at 580.

In order to demonstrate that his counsel's performance was deficient, the petitioner must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 688; 104 S. Ct. 2064. See also Burns, No. 02S01-9806-CC-00058, 1999 WL 1006315, at *6. In Tennessee, our supreme court has interpreted this test to require a showing that counsel's performance was not within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In applying this test, this court should refrain from second-guessing tactical and strategic decisions by defense counsel. Henley, 960 S.W.2d at 579. Rather, this court should defer to such decisions if they are based upon adequate preparation. Burger v. Kemp, 483 U.S. 776, 794, 107 S.Ct. 3114, 3126 (1987). See also Holt v. State, No. 01C01-9805-CC-00201, 1999 WL 729206, at *7 (Tenn. Crim. App. at Nashville, September 20, 1999).

Moreover, a reviewing court should not examine every allegedly deficient act or omission in isolation, but rather in the context of the case as a whole. State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). Ultimately, the primary concern of the court should be the fundamental fairness of the trial proceedings. Id. In other words, as previously noted, a petitioner must establish prejudicial, as opposed to merely deficient, performance by trial counsel. In order to establish prejudice, a petitioner must demonstrate a reasonable probability that the result of the proceeding would have been different but for the defective performance of counsel. Henley, 960 S.W.2d at 580. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694; 104 S. Ct. at 2068.

We conclude that the petitioner has failed to carry his burden of demonstrating either defective performance of counsel or any prejudice. The record reflects that the petitioner personally decided to forego testifying at his trial after

7

receiving counsel's careful and thorough advice as to the benefits and detriments thereof. Moreover, because the content of the petitioner's proposed testimony was identical to his statement to the police, we decline to find any prejudice. As to the reference to the petitioner's parole status, the record reflects that counsel engaged in considerable efforts to ensure the redaction of prejudicial portions of the petitioner's statement to the police. Under the facts of this case, we cannot say that his failure to notice the inclusion of the reference in the final version of the typed transcript amounted to deficient performance of constitutional dimensions. In any event, as acknowledged by the petitioner in his brief, we must presume that the jury heeded the curative instruction of the trial court in the absence of evidence to the contrary. State v. Hall, 976 S.W.2d 121, 148 (Tenn. 1998), cert. denied, _ U.S. _, 119 S.Ct. 1501 (1999); State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996).

For the foregoing reasons, we affirm the judgment of the trial court.

_____
Norma McGee Ogle, Judge

CONCUR:

_____
Jerry L. Smith, Judge

_____
Thomas T. Woodall, Judge

8