# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
May 19, 2010 Session

## STATE OF TENNESSEE v. DERRICK LEMON GOODE

**Appeal from the Circuit Court for Bedford County**
**No. 16620     Lee Russell, Judge**

**No. M2009-00508-CCA-R3-CD - Filed July 21, 2010**

Following a jury trial, the Defendant, Derrick Lemon Goode,[1] was convicted of ten counts of forgery, a Class E felony.  See Tenn. Code Ann. § 39-14-114(c).  The trial court merged each even-numbered count with the odd-numbered count preceding it, leaving convictions for Counts One, Three, Five, Seven, and Nine.  He was sentenced as a Range II, multiple offender to three years and six months for each count.  The trial court ordered the Defendant to serve these five sentences consecutively to each other, for a total effective sentence of seventeen and one-half years in the Department of Correction.  In this direct appeal, the Defendant contends that: (1) the State presented evidence insufficient to convict him and; (2) the trial court erred in ordering consecutive sentences.  After our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the Court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Robert L. Marlow, Shelbyville, Tennessee, for the appellant, Derrick Lemon Goode.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Charles Crawford, District Attorney General; and Michael D. Randles, Assistant District Attorney General, Tennessee, for the appellee, State of Tennessee.

---

[1]The Defendant's brief identifies him as "Derrick Le-Mon Goode."  It is the policy of this Court, however, to refer to defendants by the name listed in their indictments.

## OPINION

## Factual Background

This case was tried on October 28, 2008. Loyd Curtis, Jr., testified that he lived in Shelbyville and that the Defendant was a former work associate of his. On March 28, 2008, Mr. Curtis sold the Defendant a white 1989 Lincoln Town Car. Sometime later, he received letters informing him that he owed money to three convenience stores: 82 Market in Bell Buckle, Shelbyville Supermarket, and Sav-A-Lot. Mr. Curtis went to each store and viewed copies of checks that had been written from a checkbook belonging to him. He then realized he had left this checkbook in the car he sold to the Defendant. Mr. Curtis testified that all the checks were signed in his name but that he had only signed one of the checks. The checks the State introduced in support of the convictions at issue include the following information:

Check 1071 was payable to the order of "82 Market Bell Buckle" for sixty-five dollars and dated "04-04-08." Its "Memo" section contains the words "Cash & Gas." The check also has two sets of numbers written above Mr. Curtis' name and address on the top left side of the check.

Check 1079 was payable to the order of "82 Market Bell Buckle" for eighty dollars and dated "04/05/08." Its "Memo" section contains the words "Gas & Cash." The check also has two sets of numbers written above Mr. Curtis' name and address on the top left side of the check.

Checks 1069 and 1075 were payable to the order of "Derrick Goode" for one hundred dollars and seventy-five dollars and dated "04/06/08" and "01/06/08," respectively. The "Memo" section on each contains the word "Labor."

Check 1088 contains a blank "Pay to the Order of" section but was made out for $120 and dated "5-25-2008." Its "Memo" section contains the words "Labor Lot 12 Indian Trails M'Boro." It contains a "D.l." number next to Mr. Curtis' name and address.

Mr. Curtis said that, because of business difficulties, he closed the account upon which all of the checks at issue were drawn in November 2007. Finally, Mr. Curtis introduced Check 1036, which he said he had written on January 12, 2007, at Shelbyville Supermarket, having forgotten that the account was closed. He later realized his mistake and reimbursed Shelbyville Supermarket.

Mr. Curtis further testified that the apparent driver's license and phone numbers appearing on some of the checks did not belong to him. He also said he never authorized anyone else to use his account and received no consideration for the use of the checks. He acknowledged on cross-examination that he went to the Sav-A-Lot at which some other checks drawn on the same account were passed and watched video of a man passing the checks; this man was not the Defendant. Mr. Curtis could not say who wrote the checks, but stated that he did not write them.

Prasant Maheta owned the Bell Buckle 82 Market in March 2008. He said that his store required its cashiers to record the driver's license number and phone number of any person paying with a check; he acknowledged that his clerks did not always do so, however. He also said that he became acquainted with the Defendant, who he knew as "Debow." The Defendant would sometimes come into the 82 Market two or three times a day; occasionally, however, a few days would pass in which the Defendant would not come in.

Mr. Maheta testified that his store accepted Checks 1071 and 1079. He did not see who wrote the checks. After both checks were returned by the bank, Mr. Maheta called the Defendant, who said he would reimburse 82 Market. The Defendant did not deny passing the checks and never claimed that someone else passed them. The Defendant told Mr. Maheta that he had received the checks in payment for work he had done for Mr. Curtis; Mr. Maheta acknowledged that, if that were the case, then the checks should have been made payable to the Defendant rather than 82 Market. As of trial, the Defendant still had not reimbursed Mr. Maheta.

Detective Brian Crews of the Shelbyville Police Department investigated the forged checks in this case after receiving a report and copies of the checks. Detective Crews discovered that Roderick Brooks, to whom Check 1082 (not the basis for an offense charged against the Defendant) was made payable, was incarcerated at the time of the investigation. He spoke to Mr. Brooks, who admitted his involvement with passing that check.

Detective Crews also noted that Check 1071 contained a driver's license number only slightly different from the Defendant's driver's license number. Check 1079, the other check made out to 82 Market, contained a different invalid driver's license number. Check 1088, the check with a blank "Pay to the Order of" section, contained the Defendant's correct driver's license number. Detective Crews tried to question the Defendant about the checks, but the Defendant was very defensive. The detective was of the opinion that the Defendant was "wanting to fight." On cross-examination, Det. Crews acknowledged that he had worked cases before in which people have obtained and illegally used another's driver's license number.

The Defendant did not testify and presented no evidence in his defense. The Defendant was convicted as charged. He now appeals.

**Analysis**

**I. Sufficiency of the Evidence**

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

"A person commits an offense who forges a writing with intent to defraud or harm another." Tenn. Code Ann. § 39-14-114(a). Five acts of forgery underlie the ten counts charged in the Defendant's indictments. The Defendant was charged with forging Checks 1069, 1071, 1075, 1079, and 1088 under Tennessee Code Annotated section 39-14-114(b)(1)(A)(i), which states that "forge" means to "[a]lter, make, complete, execute or authenticate any writing so that it purports to . . . [b]e the act of another who did not authorize the act . . . ."

He was also charged with forging the same checks under Tennessee Code Annotated section 39-14-114(b)(1)(C), which states that "forge" means to "[i]ssue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged within the meaning of subdivision (b)(1)(A)." The Defendant was convicted of each count; the trial court merged the counts charged under Tennessee Code Annotated section 39-14-114(b)(1)(C) with the counts charged under Tennessee Code Annotated section 39-14-114(b)(1)(A)(i).

We note that

the law is firmly established in this State that to warrant a criminal conviction upon circumstantial evidence alone, the evidence must be not only consistent with the guilt of the accused but it must also be inconsistent with his innocence and must exclude every other reasonable theory or hypothesis except that of guilt, and it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that he is the one who committed the crime.

Pruitt v. State, 460 S.W.2d 385, 390 (Tenn. Crim. App.1970). "The inferences to be drawn from [circumstantial] evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." Id. at 391 (quoting Marable v. State, 313 S.W.2d 451, 452 (Tenn. 1958)).

Mr. Curtis testified that he sold the Defendant a car on March 28, 2008, and that he mistakenly forgot to remove from the car the checkbook containing the checks at issue. This evidence is sufficient to show how the Defendant came to possess the checks at issue.

**A. Checks 1071 and 1079**

Mr. Maheta testified that he confronted the Defendant, a frequent patron of his 82 Market store in Bell Buckle, when Checks 1071 and 1079 were returned. Respectively, the checks are dated April 4 and 5, 2008. The Defendant did not deny passing the checks, and he took responsibility for the returned checks by promising to pay the debt incurred by their use. Mr. Curtis' denial that he wrote the checks, as well as the fact that the checks were made out to 82 Market rather than the Defendant, diminish the credibility of the Defendant's claim that the checks were given to him in payment for work he had done. We conclude that this evidence is sufficient to exclude "every other reasonable theory or hypothesis" but that the Defendant wrote and passed Checks 1071 and 1079. See Pruitt, 460 S.W.2d at 390. To conclude otherwise would require us to believe that the Defendant either assumed responsibility for checks about which he knew nothing or that he lied for no apparent reason in order to shield the actual writer of the checks from responsibility. The evidence is therefore sufficient to establish that the Defendant wrote and passed Checks 1071 and 1079.

**B. Checks 1069 and 1075**

Checks 1069 and 1075 are both dated April 6, 2008, and were both made payable to the Defendant as "Derrick Goode" for "[l]abor." The dates on these checks, relative to the earlier dates on Checks 1071 and 1079, are sufficient to allow any rational trier of fact to conclude that Checks 1069 and 1075 were passed after Checks 1071 and 1079. We have already found the evidence sufficient to establish that the Defendant wrote and passed Checks 1071 and 1079; that being so, we conclude that there is a reasonable inference that the Defendant, after passing Checks 1071 and 1079, proceeded to pass Checks 1069 and 1075 payable to the order of the Defendant. In addition, our review reveals that the handwriting on all of these checks contains a number of distinct similarities that the jury could have used to conclude that the same person wrote all four. See, e.g., State v. Williams, 929 S.W.2d 385, 390 (noting similarities perceptible to a non-expert between particular letters on two handwriting exemplars).

**C. Check 1088**

We also conclude the evidence is sufficient to establish that the Defendant wrote and passed Check 1088. His driver's license number appears on the check, supporting the inference that the Defendant presented his driver's license when passing the check. We again note a number of handwriting similarities between Check 1088 and Checks 1069, 1071, 1075, and 1079 that the jury could have used to conclude that the same person wrote all five.

After considering the evidence in the light most favorable to the prosecution, we conclude that any rational juror could have found the Defendant guilty of all five counts beyond a reasonable doubt. This issue has no merit.

**II. Consecutive Sentencing**

The Defendant contends that the trial court erred in ordering him to serve his sentences consecutively. On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comments; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999); see also State v. Carter, 254 S.W.3d 335, 344-45 (Tenn. 2008). If our review reflects that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely de novo without the

presumption of correctness. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see also Carter, 254 S.W.3d at 344-45.

In conducting a de novo review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b); see also Carter, 254 S.W.3d at 343; State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002).

Tennessee Code Annotated section 40-35-115(b) provides that a trial court may, in its discretion, order sentences to run consecutively if it finds any one of the following criteria by a preponderance of the evidence:

> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b). These criteria are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing.

In addition to these criteria, consecutive sentencing is also subject to the general sentencing principles that the overall sentence imposed "should be no greater than that deserved for the offense committed," that it "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," and that the defendant's "potential for rehabilitation" be considered. Tenn. Code Ann. § 40-35-103(2), (4) and (5).

Only the Defendant's presentence report was presented as proof at his sentencing hearing. The presentence report indicates that, at the time of sentencing, the Defendant was married and thirty-seven years old. He reported that he received a GED from Jackson Community College in 1989, having dropped out of high school in the ninth grade. The Defendant reported generally favorable mental and physical health, but noted that he suffered from asthma, high blood pressure, and acid reflux and nerve problems that resulted from being accidentally shot in the stomach in 1994. The Defendant stated that he had abused alcohol, cocaine, and marijuana in the past. He said he had been sober since 2004, however. He reported a total of about ten months of employment, as a laborer, since 2003.

The Defendant's criminal record contains a nearly unbroken string of criminal conduct beginning in 1993. Since then, the Defendant has been convicted of the following misdemeanors: one count of unlawful drug paraphernalia use, six counts of driving with a revoked license, two counts of failure to appear, two counts of criminal impersonation, one count of criminal trespassing and, from March to May 2001, thirty-one counts of passing worthless checks. He has also been convicted of the following felonies: one count of possession of cocaine, one count of forgery up to $1,000, one count of theft up to $500, and two weapons charges. The Defendant's criminal record also reflects a number of unsuccessful periods of probation. He was most recently convicted of driving with a revoked license on November 6, 2007; this conviction resulted in a suspended sentence of eleven months and twenty-nine days, which was still in effect at the time he committed the crimes at issue.

The trial court ordered consecutive service based solely on its finding that the Defendant is "is an offender whose record of criminal activity is extensive." Tenn. Code Ann. § 40-35-115(b)(2). We also agree with the State in noting that the trial court could have

found that the Defendant was being "sentenced for an offense committed while on probation." Tenn. Code Ann. § 40-35-115(b)(6). The trial court certainly did not err in finding that the Defendant's record of criminal activity is extensive. The trial court also considered the Defendant's potential for rehabilitation and found him unsuitable, concluding that he has a "virtually continuous career of committing crimes interrupted by periods of incarceration."

Although a seventeen and one-half-year sentence for five acts of forgery might be excessive for some defendants, the Defendant herein has demonstrated his devotion to criminal behavior and his inability or unwillingness to rehabilitate himself. He has one previous conviction for forgery and thirty-one previous convictions for passing worthless checks. Under these facts and circumstances, we conclude that the trial court's imposition of consecutive sentences was appropriate.

### Conclusion

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
DAVID H. WELLES, JUDGE