IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 24, 2011

**STATE OF TENNESSEE v. KAREN E. CARPENTER**

**Appeal from the Circuit Court for Grainger County**
**No. 4695      O. Duane Slone, Judge**

**No. E2010-02391-CCA-R3-CD - Filed September 19, 2011**

Following a jury trial, the Defendant, Karen E. Carpenter, was convicted of facilitation of the manufacture of .5 grams or more of methamphetamine, a Class C felony, and facilitation of felony possession of drug paraphernalia, a Class A misdemeanor. See §§ 39-11-403, -17-417, -17-425.  In this appeal as of right, the Defendant contends (1) that the trial court erred by failing to, sua sponte, declare a mistrial after a witness mentioned the Defendant's prior criminal charges; (2) that the jury instruction given by the trial court regarding the witness' testimony was not "adequate;" and (3) that prosecutorial misconduct during the opening and closing statements denied her a fair trial.  Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are**
**Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Edward R. Sempkowski, Morristown, Tennessee, for the appellant, Karen E. Carpenter.

Robert E Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; James B. Dunn, District Attorney General; and Steven R. Hawkins, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On January 14, 2009, the Defendant was indicted on one count of manufacturing .5 grams or more of methamphetamine, one count of felony possession of drug paraphernalia, and one count of feloniously acquiring a chemical, drug, or ingredient that can be used to

produce methamphetamine.[1]  At trial, Detective Anthony Maxey of the Bean Station Police Department testified that on August 19, 2008, he obtained a search warrant for a mobile home and "outbuilding" owned by the Defendant's mother.  Detective Maxey found surveillance cameras attached to the trailer and "outbuilding."  The cameras were attached to a video monitor found in the "outbuilding" and allowed the viewer "to see who was pulling into the residence, who was passing by."  Inside the "outbuilding," Detective Maxey found .1 grams of methamphetamine powder and a glass jar with 8.8 grams of a liquid containing methamphetamine.  Detective Maxey also found a "pill soak"[2] with 19.3 grams of pseudoephedrine.

In addition to the methamphetamine and "pill soak," Detective Maxey testified that he found several items used in the production of methamphetamine in the "outbuilding" including 50 lithium batteries, several ounces of acetone, drain-cleaner, starting fluid, a gallon of muriatic acid, several ounces of hydrogen peroxide, a microwave, and several glass beakers.  Detective Maxey also found one-and-a-half tablets of methadone, a listing of codes "used by law enforcement," a respirator mask, several "sandwich bags," a set of digital scales, and a set of "walkie-talkies."  Detective Maxey admitted on cross-examination that the Defendant's fingerprints were not found on any of the items taken from the "outbuilding."

Deputy Steven Mitchem of the Grainger County Sheriff's Department assisted in the search of the trailer.  In a back bedroom of the trailer, Deputy Mitchem found two pill bottles with the Defendant's name on them, a set of "walkie-talkies," and a notebook with the Defendant's name written on the cover.  At trial, the handwriting contained in the notebook was identified as belonging to the Defendant.  Also found in the bedroom were three receipts which showed purchases of Ziploc bags, isopropyl alcohol, alkaline batteries, carburetor cleaner, and a microwave.  Detective Maxey testified that it was common for methamphetamine to be packaged in Ziploc bags and that the other items could all be used for the manufacture of methamphetamine.  A fourth receipt was found with the Defendant's boyfriend's name, Zandell Mitchell, on it.  That receipt showed a purchase of carburetor cleaner.

The Defendant was not at the trailer on the day of the search and an arrest warrant was issued for her.  Kelly Acuff testified that she was the Defendant's community corrections officer and that the Defendant was required to report any change of address to her.  The

---

[1]The third count was eventually dismissed.

[2]Manufacturers of methamphetamine soak pseudoephedrine pills in order to separate the active ingredient from the filler contained in the pills.

Defendant had previously provided the address for her mother's trailer as her home address. Ms. Acuff testified that she had a scheduled meeting with the Defendant on August 14, 2008, five days before the search, and that the Defendant did not report a change of address. Ms. Acuff met with the Defendant after the search on August 21, 2011, and the Defendant reported that she had moved to a cabin on County Line Road. After this meeting, the Defendant stopped reporting to Ms. Acuff. Detective Maxey testified that he set up surveillance on the cabin located on County Line Road but that he never saw the Defendant there. Detective Maxey also testified that he noticed a surveillance camera on the front porch of the cabin similar to those found at the trailer and "outbuilding." The Defendant was arrested on January 23, 2009.

The Defendant presented several witnesses who testified that on the day of the search, she no longer lived in the trailer and was not involved in the production of methamphetamine. Shawn Horne testified that the Defendant rented a cabin from him located on County Line Road. A three-month lease was signed by the Defendant on July 26, 2008. The Defendant's boyfriend, Mr. Mitchell, testified that the Defendant was staying with him at a motel in Claiborne County beginning in May 2008. According to Mr. Mitchell, he was present when the Defendant signed the lease on the cabin in July 2008. Mr. Mitchell testified that when the Defendant moved out of the trailer, she only brought clothes and personal items because the furniture in her bedroom belonged to her mother. Mr. Mitchell also testified that he lived at the cabin with the Defendant and that when they first moved in they had no furniture. Instead, they "acquired [furniture] as time went on." According to Mr. Mitchell, once the lease on the cabin expired, he and the Defendant moved all of their furniture into a storage unit.

Terri Shelnutt, a life-long friend of the Defendant, testified that she spoke with the Defendant in March 2008. During that conversation, the Defendant told Ms. Shelnutt that she "wanted her daughter back" and "just wanted a normal life." Ms. Shelnutt testified that she advised the Defendant to move out of her mother's trailer. According to Ms. Shelnutt, in April 2008 the Defendant had moved out of the trailer and was staying at a motel. Ms. Shelnutt testified that the Defendant moved into a cabin at the end of July 2008 and that she visited the Defendant at the cabin five or six times. According to Ms. Shelnutt, there was no furniture at the cabin when the Defendant first moved in, but she saw more furniture in the cabin with each visit. On cross-examination, Ms. Shelnutt admitted that the Defendant stayed in the back bedroom when she lived at the trailer. However, Ms. Shelnutt testified that she also saw other people using that bedroom. Amanda Potter, the Defendant's friend, and Jill Kinsler, the Defendant's employer, also testified that the Defendant wanted to move out of the trailer in order to get "her daughter back" and that the Defendant was living in a rented cabin in July 2008.

Jason Wooten testified that he was present at the trailer during the search, arrested that day, and pled guilty to manufacturing methamphetamine. Mr. Wooten testified that he had been "around" the trailer for two or three weeks prior to the search and that he had never seen the Defendant "before in [his] life." On cross-examination, Mr. Wooten denied ever going into the "outbuilding," ever making methamphetamine, and ever seeing methamphetamine at the trailer or "outbuilding." Mr. Wooten claimed he was only at the trailer "to get to know this little girl who was down there at the same time." However, Mr. Wooten admitted to trading boxes of Sudafed for opiates.

Kenny Stuffle was also arrested at the trailer and pled guilty to manufacturing methamphetamine. Mr. Stuffle testified that he stayed in the back bedroom and that he never saw the Defendant during the three weeks he was staying at the trailer. However, on cross-examination, Mr. Stuffle testified that the Defendant would come to the trailer two or three times a week while he was staying there and that his testimony on direct examination was a lie. Mr. Stuffle also denied ever making or selling methamphetamine and denied that anyone was making methamphetamine in the "outbuilding" on the day of the search. Tracy Hill was also arrested as a result of the search. Ms. Hill testified that she had lived in the "outbuilding" since October 2007 and that the materials in the building belonged to her. Ms. Hill testified that the Defendant had moved out of the trailer in May 2008 and denied that the had Defendant ever supplied her with any material for the production of methamphetamine.

On rebuttal, the State presented the testimony of Margaret Larner, the paternal grandmother of the Defendant's child. Ms. Larner testified that she was the legal guardian of the Defendant's child and had been in court 11 times regarding custody of the child. Ms. Larner testified that on the date of the search, the Defendant lived at the trailer. Ms. Larner also testified that at a custody hearing on July 29, 2008, the Defendant testified under oath that she lived at the trailer. Also on rebuttal, Detective Maxey testified that the back bedroom was padlocked. Detective Maxey also testified that Ms. Hill told him the bedroom was used by the Defendant and that the Defendant "always locked it when she left because she didn't want people going through her things."

Based upon the foregoing evidence, the jury convicted the Defendant of the lesser-included charges of facilitation of the manufacture of .5 grams or more of methamphetamine and facilitation of felony possession of drug paraphernalia. The trial court classified the Defendant as a Range II, multiple offender and sentenced her to an effective eight-year sentence to be served in confinement.

## ANALYSIS

*I. Mistrial and Jury Instruction*

The Defendant contends that the trial court erred by failing to order a mistrial, sua sponte, after a witness stated that the Defendant had "two prior meth charges on her." The Defendant argues that she had no convictions for manufacturing methamphetamine and that she chose not to testify at trial in order to prevent the jury from learning about her actual prior felony convictions. The Defendant complains that the witness' statement "was so egregious so as to be plain error." The Defendant further contends that the trial court's instruction to the jury to disregard the witness' statement was "too vague" and "not sufficient to overcome the devastating prejudicial effect of [the] testimony." The State responds that the Defendant has waived this issue by failing to request a mistrial from the trial court and by failing to request a more complete jury instruction. The State further responds that the Defendant is not entitled to plain error review of this issue.

Several of the defense witnesses testified that the Defendant had moved out of her mother's trailer because she "wanted her daughter back." For rebuttal, the State presented the testimony of Margaret Larner, the paternal grandmother and legal guardian of the Defendant's child. On direct examination, Ms. Larner testified that a few weeks before the search, the Defendant testified under oath at a custody hearing that she lived in her mother's trailer. After an odd series of questions on cross-examination regarding whether Ms. Larner had met the technical requirements to adopt the Defendant's child, the following exchange occurred:

> [Defense counsel]: Now, there was a point in time where you weren't letting [the Defendant] see the child or talk to the child, but you were letting your son live with you who has been in a lot of drug trouble.
> [Assistant District Attorney]: Judge, that's going far afield now. That's immaterial. We object.
> [Defense counsel]: Is that true, ma'am? You wouldn't let [the Defendant] see the child or talk to the child, but you let your son who was in drug trouble himself - -
> [Ms. Larner]: No, that whole - -
> [Defense counsel]: - - see the child?
> [Ms. Larner]: That's not true. It's not true.
> [Defense counsel]: Your son lives with you, doesn't he?
> [Ms. Larner]: No, he does not.
> [Defense counsel]: How often does he see the child?
> [Ms. Larner]: He doesn't come by very often. But it's not about my son today. And the reason I didn't let [the Defendant] see [the child] is because she was in jail a lot. She's got two prior meth charges on her.
> [Defense counsel]: Your Honor, I object to this not being responsive to my question - -

[Trial court]: Sustained.
[Defense counsel]: - - and ask the [c]ourt to instruct the [j]ury - -
[Trial court]: The [j]ury is instructed to disregard the witness'[] last statement.

At no point did the Defendant request a mistrial or challenge the sufficiency of the trial court's jury instruction.

The determination of whether to grant a mistrial lies within the sound discretion of the trial court and should be granted "only in the event of a 'manifest necessity' that requires such action." State v. Hall, 976 S.W.2d 121, 147 (Tenn. 1998) (appendix). The burden of establishing a "manifest necessity" lies with the party seeking the mistrial. State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). "The purpose for declaring a mistrial is to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict." Id. A trial court's decision regarding whether to grant a mistrial will only be overturned upon a showing of an abuse of discretion. Id.

A defendant "will not be permitted to take advantage of errors which he himself committed, or invited, or induced the trial court to commit, or which were the natural consequences of his own neglect or misconduct." State v. Robinson, 146 S.W.3d 469, 493 (Tenn. 2004) (quoting Norris v. Richards, 246 S.W.2d 81, 85 (Tenn. 1952)) (quotation marks omitted). To that end, "[i]f a party fails to request a curative instruction, or if dissatisfied with the instruction given and does not request a more complete instruction, the party effectively waives the issue for appellate purposes." State v. Griffis, 964 S.W.2d 577, 599 (Tenn. Crim. App. 1997). Furthermore, failure to request a mistrial waives any further action by the trial court. Hall, 976 S.W.2d at 157.

Defense counsel repeatedly asked Ms. Larner about allowing her son, who had "been in a lot of drug trouble," to see the Defendant's child while refusing to allow the Defendant to see her child. Ms. Larner responded to defense counsel's questioning by stating that the Defendant had "two prior meth charges." Defense counsel failed to make a proper objection to the statement, instead objecting on the grounds that Ms. Larner's answer was "not responsive" to his question. See Tenn. R. Evid. 404(b) (regarding evidence of other crimes, wrongs, or acts); see also Tenn. R. App. P. 36 (a party's failure to raise a contemporaneous objection generally waives the issue on appeal). Nevertheless, defense counsel requested, and the trial court promptly gave, a curative instruction for the jury to disregard the statement. The jury is presumed to have followed the trial court's curative instruction. State v. Reid, 164 S.W.3d 286, 342 (Tenn. 2005) (citing Hall, 976 S.W.2d at 148). At no point did defense counsel request a mistrial or request a more complete instruction. Accordingly, we conclude that any complaint about the instruction or the trial court's failure to declare a mistrial has been waived.

The Defendant contends that she is entitled to plain error relief on this issue. In determining whether plain error exists, this court must examine the following factors: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000). All five factors must be present to establish plain error. Id. at 283. The plain error "must have been of such a great magnitude that it probably changed the outcome of the trial." Id. (quoting State v. Adkisson, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994)).

We cannot conclude that plain error exists in this case. The jury was already aware that the Defendant had some sort of criminal record because it had already been informed that the Defendant was on community corrections when the search occurred. The trial court provided a curative instruction immediately following the statement, and the jury is presumed to have followed that instruction. Additionally, defense counsel invited Ms. Larner's statement by repeatedly asking her about allowing her "drug trouble[d]" son to see the Defendant's child but refusing to allow the Defendant to see the child. The Defendant has failed to show that a substantial right was adversely affected or that consideration of any error is necessary to do substantial justice. Accordingly, we conclude that this issue is without merit.

## II. Alleged Prosecutorial Misconduct

The Defendant contends that the prosecutor made several statements during his opening and closing statements that constitute prosecutorial misconduct. The Defendant argues that statements made by the prosecutor that a "great quantity of meth" was found in the "outbuilding" and that the "outbuilding" was a "high tech meth production center" were misstatements of the evidence designed to mislead the jury. The Defendant also argues that the prosecutor improperly mentioned that she was on community corrections several times during his opening and closing statements. The Defendant further argues that the prosecutor's statement during his closing argument that the trial court would sentence her distracted the jury with "issues broader than the guilt or innocence of the accused." The Defendant also contends that she is entitled to plain error review on this issue. The State responds that the Defendant has waived this issue by failing to make a contemporaneous objection and by failing to raise the issue in her motion for new trial. The State further responds that the Defendant has waived plain error review by failing to submit any argument on the issue in her brief.

During his opening statement, the prosecutor stated that "a great quantity of methamphetamine" had been found in the "outbuilding." The prosecutor also stated that the "outbuilding" was "a high-tech methamphetamine production center." The prosecutor went on to describe in detail the surveillance equipment set up around the trailer and "outbuilding." The prosecutor then stated that it "was a high-tech big operation as far as the production of methamphetamine" in Grainger County. The prosecutor also made reference to the fact that the Defendant was on community corrections at the time of the search. Defense counsel during his opening statement mistakenly told the jury that 8 grams of methamphetamine powder had been found in the "outbuilding." During closing arguments, defense counsel told the jury that the Defendant had pled guilty to "anything she's ever done before." Defense counsel also stated that the Defendant was not a threat to the community and that "[t]his is her last day in [c]ourt." In rebuttal, the prosecutor stated "if you folks convict her, that's not the end of it . . . [w]e'll have a sentencing hearing."

The argument of counsel "is a valuable privilege that should not be unduly restricted." Smith v. State, 527 S.W.2d 737, 739 (Tenn. 1975). Accordingly, "[a]ttorneys have great leeway in arguing before a jury, and the trial court's broad discretion in controlling their arguments will be reversed only upon an abuse of discretion." State v. Scarborough, 300 S.W.3d 717, 731 (Tenn. Crim. App. 2009) (citing Terry v. State, 46 S.W.3d 147, 156 (Tenn. 2001)). Prosecutorial misconduct will only constitute reversible error if it affected the outcome to the defendant's prejudice. Id. Failure to contemporaneously object to the prosecutor's statements will waive appellate review of the issue. Id. at 732; State v. Armstrong, 256 S.W.3d 243, 249 (Tenn. Crim. App. 2008). The Defendant failed to contemporaneously object to the prosecutor's statements and failed to include this issue in her motion for new trial. Accordingly, we conclude that the Defendant has waived consideration of this issue. With regard to plain error review, we note that the Defendant has failed to make any argument in her brief to establish the existence of plain error on this issue, and has thereby failed to carry her burden of demonstrating plain error. See also Tenn. Ct. Cr. App. R. 10(b) ("Issues which are not supported by argument . . . will be treated as waived in this court.").

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE