# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs May 21, 2013

## NICHOLAS OVERBAY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Sullivan County**
**No. C58,360     Robert H. Montgomery, Jr., Judge**

_____

**No. E2012-01691-CCA-R3-PC - Filed October 18, 2013**

_____

The Petitioner, Nicholas Overbay, appeals the Sullivan County Criminal Court's denial of post-conviction relief for his conviction for first degree murder and attempted first degree murder. On appeal, the Petitioner argues that he received ineffective assistance of counsel. Upon review, we affirm the decision of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, J., joined.

Jeremy E. Harr,  Kingsport, Tennessee, for the Petitioner-Appellant, Nicholas Overbay.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel, Assistant Attorney General; and Barry P. Staubus, District Attorney General, for the Appellee, State of Tennessee.

## OPINION

The underlying facts of the case are summarized by this Court on direct appeal:

The proof at trial, as accredited by the jury's verdict, established that

[the Petitioner] and Corey A. Osborne met the victims, Joshua Tilson and Bruno Petrovic,[1] at a parking lot near the trail head at Warrior's Path State Park on Cedar Branch Road at around 5:15 p.m. on Christmas Day of 2004.

_____

[1] The surviving victim's name is spelled Bruno Petrovic throughout this Court's opinion on direct appeal but is spelled Bruno Petrovich in the post-conviction court's order. For consistency's sake, we will continue to spell the victim's name as Bruno Petrovic.

When the victims arrived, [the Petitioner] shot Mr. Tilson once in the head with a gun that the men took earlier that day from Mr. Osborne's grandmother. [The Petitioner] then shot Mr. Petrovic three times as he ran away from the scene. [The Petitioner] and Mr. Osborne fled the area, ending up in New Orleans, Louisiana in time for New Year's Eve. As the investigation progressed, police were able to track the men down. [The Petitioner] and Mr. Osborne were arrested in New Orleans on January 3, 2005. The murder weapon was found in the car that [the Petitioner] and Mr. Osborne had parked in a nearby casino parking garage.

After their arrest, [the Petitioner] and Mr. Osborne were transported back to Tennessee where they were indicted in June of 2005 for first degree murder and attempted first degree murder by the Sullivan County Grand Jury. Prior to trial, Mr. Osborne entered into a plea agreement whereby he agreed to testify at trial against [the Petitioner]. Mr. Osborne pled guilty to conspiracy to commit first degree murder and attempted first degree murder, for an effective sentence of 50 years as a Range I, standard offender with a thirty percent release eligibility.

At trial, Mr. Osborne was the chief prosecution witness. Mr. Osborne's testimony was corroborated by the testimony of Mr. Petrovic. Mr. Petrovic admitted that prior to December 24, 2004, he sold and smoked marijuana and had participated in trafficking illegal guns. According to Mr. Petrovic, Mr. Tilson also sold and smoked marijuana. Mr. Osborne had tried to buy a gun from Mr. Petrovic, but he refused to sell Mr. Osborne a weapon.

According to Mr. Petrovic, he and [the Petitioner] were friends at one time. Their relationship took a downturn when Mr. Petrovic heard rumors that [the Petitioner] was a "snitch" and was using crack cocaine. Mr. Petrovic continued to talk to [the Petitioner] but stated that they were not as close as they used to be. About two weeks prior to Christmas, Mr. Petrovic called [the Petitioner] and left a message on his answering machine, telling [the Petitioner] he wanted to "take it to another level." Apparently, Mr. Petrovic meant that he wanted [the Petitioner] to leave him alone. After Mr. Petrovic left that message, he, [the Petitioner], Mr. Osborne, and Mr. Tilson met at Borden Park and smoked marijuana together. [The Petitioner] and Mr. Osborne continued to talk, but most of their conversations were about selling marijuana.

On Christmas Day, Mr. Tilson picked up Mr. Petrovic. They drove to Virginia to visit Mr. Tilson's grandparents before returning to Kingsport. Mr. Tilson dropped Mr. Petrovic off at his house. Around 4:00 p.m., Mr. Petrovic received a call from [the Petitioner]. [The Petitioner] wanted to get in touch with Mr. Tilson to sell him some speakers. [The Petitioner] wanted to meet them at 5:00 p.m. at the gravel parking lot off Cedar Branch Road.

Mr. Tilson picked up Mr. Petrovic, and they drove to the parking lot where they met [the Petitioner] and Mr. Osborne. Mr. Petrovic saw luggage in the back seat of Mr. Osborne's car. Mr. Petrovic asked about the speakers, and Mr. Osborne walked over to open the trunk of his car. When Mr. Petrovic looked into the trunk, he heard a gunshot. When he turned around, he saw [the Petitioner] holding a gun. Mr. Tilson was falling to the ground. Mr. Petrovic asked [the Petitioner] what he was doing. [The Petitioner] told Mr. Petrovic to keep his distance because he had done this plenty of times before. Mr. Petrovic saw Mr. Osborne approaching him from behind, so he started running. As he ran through the woods, he was shot three times. At one point he fell, losing his cell phone. Mr. Petrovic made it to the home of Larry Daniels, where he asked for help.

State v. Nicholas A. Overbay, No. E2007-02478-CCA-R3-CD, 2009 WL400638, at 1-2 (Tenn. Crim. App. Feb. 18, 2009), perm. app. denied (Tenn. Aug. 17, 2009). Based on these facts, the jury convicted the Petitioner of first degree murder for the death of Joshua Tilson and attempted first degree murder of Bruno Petrovic. The trial court sentenced the Petitioner to life imprisonment for first degree murder and twenty years for attempted first degree murder, and this Court affirmed the judgments on appeal. Id.

On August 10, 2010, the Petitioner filed a timely pro se petition for post-conviction relief, raising numerous issues including ineffective assistance of counsel. The post-conviction court entered a preliminary order dismissing all of the claims except those related to ineffective assistance of counsel. After appointment of counsel, the Petitioner filed an amended petition for post-conviction relief.

At the June 20, 2012 post-conviction hearing, the Petitioner's trial counsel was the only witness called to testify. Counsel testified that he became involved in the Petitioner's case prior to the Petitioner's arrest in December 2004. He stated that he hired two investigators, Mr. Robert Johnson and Mr. Craig Meade, to assist in his investigation of the case. Counsel explained that Mr. Johnson, a retired Sullivan County sheriff, assisted in investigations at the scene of the crime, and that Mr. Meade was hired later to help locate and interview witnesses. Counsel denied that the Petitioner told Counsel that Mr. Petrovic

threatened to kill Mr. Tilson's uncle in the month leading up to the murder and could not recall whether Mr. Tilson's uncle had been interviewed by anyone on the defense team. He opined that any testimony about threats made by Mr. Petrovic to other individuals were not relevant in this case because "there was no issue in this case that this was a cold-blooded murder. That was out of my client's own lips."

Counsel stated that he was aware that the Petitioner suffered from Attention Deficit Hyperactivity Disorder (ADHD) and had been involved in a serious bike accident as a child. He conceded that no experts were called to testify about the possible effects of ADHD but told the court about the numerous medical experts the defense team hired to explore that possibility. He stated that he engaged the services of Dr. Bennett Norton to conduct Magnetic Resonance Imaging and blood tests on the Petitioner; Drs. Steven Lowhon, Charles Stanley, and Margaret Robbins to conduct psychological evaluations of the Petitioner; and Dr. John Vandervere to investigate the possible drugs used by the Petitioner. Counsel explained that he discussed the Petitioner's psychological and drug problems with the experts, but "the problem that we had, Your Honor, in this case was that [the Petitioner] made it real clear that this was a planned robbery and murder. This was not some spontaneous event . . . [where] he acted out of impulse . . . [or] was so impaired that it caused him to act out."

Counsel testified that the Petitioner told him his plan and what happened the day of the murder. He stated that the Petitioner's story "never wa[i]vered" and reiterated that this was not a case where the Petitioner suffered from some sort of mental breakdown or impairment. He explained that "[w]e don't make up the facts. We have to deal with them." Counsel testified that his goal was to create options for the Petitioner to escape a life sentence by negotiating with the State. He was able to negotiate a plea offer from the State for forty years at one hundred percent; however, he stated that the Petitioner rejected all offers from the State because the deal would require him to testify against his codefendant and he would "never walk into prison being a snitch."

Counsel explained that he did not introduce into evidence the Petitioner's drug report showing elevated enzymes, which are indicative of drug and alcohol use, because there was "nothing tactical to gain." Counsel stated that he would have "love[d] to put [the Petitioner] on the stand and had him say he was all gooned up and couldn't function and it was just a reaction . . . but that's not what he told us and that's not what he would have testified to." Counsel acknowledged that no witnesses were called for the defense but stated that the Petitioner told him that there were no witnesses that he wanted to call or that could be helpful to the defense. Counsel further testified none of the thirty-eight or more witnesses that the defense team interviewed could have been used to impeach anything in the State's case. When asked why he did not call two witnesses that allegedly heard threats made by Mr.

-4-

Petrovic to the Petitioner, Counsel stated that there was a tape of the threats, which was played for the jury.

Counsel acknowledged that he did not ask for a mistrial when the District Attorney misstated the terms of the testifying codefendant's plea deal, but he opined that "there was no basis for a mistrial . . . [the District Attorney] misspoke, corrected it and Judge Blackwood . . . immediately corrected the record." Counsel conceded that he was aware that Mr. Petrovic dealt in guns but that he did not send an investigator to the scene of the murder to search for a gun that belonged to Mr. Petrovic. Counsel stated that he did not believe it was prudent to search for a gun because the Petitioner had told him that neither victim was armed, and there was no other indication that Mr. Petrovic had a gun with him at the scene.

On cross-examination, Counsel stated that he met with the Petitioner over forty times during the course of his representation, and that during that time the Petitioner's story never changed. Counsel also clarified that he did not present a voluntary intoxication defense because the Petitioner's codefendant denied that the two were using drugs during the murder, so in order to establish that defense, the Petitioner would have to "carry the ball," which he could not do because those were not the facts. During cross-examination, the State introduced several exhibits including two letters from Counsel to the Petitioner concerning the status of the Petitioner's case. Counsel testified that the first letter confirmed a plea offer from the State and the Petitioner's rejection of that offer. Counsel testified that the second letter confirmed that the Petitioner did not want to testify and knew of no witnesses that would be helpful to his defense. In the second letter, Counsel also opined that "the only viable defense is that the State's evidence fails to show premeditation . . . However, as we discussed, there will be strong, if not overwhelming facts to the contrary." The letter also voiced Counsel's concern that "the outcome of your case will be far worse than the plea agreement which you were offered," but Counsel left the decision regarding whether to accept the plea agreement to the Petitioner. Counsel testified that he believed there was a strong likelihood that the Petitioner would be convicted of first degree murder and attempted first degree murder because "there was ample evidence to support that."

Following the hearing, the post-conviction court made extensive oral findings and entered an order denying relief on July 18, 2012. The order outlines the court's detailed factual findings regarding Counsel's representation of the Petitioner and reaches the following conclusions:

> The Court finds that [Counsel] provided the Petitioner with exceptional representation. The Court finds that [Counsel] is a highly qualified criminal defense attorney and used his knowledge, skill and experience to represent [the] Petitioner to the highest degree. [Counsel] and his staff fully investigated

the case and explored potential defense strategies with numerous lay witnesses, as well as with retained professionals.

The Court finds that [Counsel] also met with the Petitioner on numerous occasions during his representation of Petitioner. However, based on the Petitioner's statement, the Petitioner's flight after the shooting, the testimony of the cooperating co-defendant and the surviving victim, Bruno Petrovic[], the strength of the State's case was very high and defense options were extremely limited.

The Court also finds that [Counsel], as a result of his very strong defense representation of the Petitioner, was able to secure a significant concession from the State when the State offered a 40 year sentence at 100% rather than the potential life sentence that Petitioner was facing. However, the Petitioner rejected the offer because it would require [the] Petitioner to testify against his co-defendant.

The Court finds that while the defense called no witnesses at trial, the Court accredits the testimony of [Counsel] that all defense issues were brought out by the testimony of the State's witnesses and any other potential testimony would not be relevant or would hamper the defense.

The Court finds that based on its review of all the evidence in the post-conviction case [Counsel]'s performance was not deficient. Further, the Court finds that even if there was some deficiency on the part of [Counsel], due to the overwhelming evidence in the case there was no prejudice to the Petitioner. Further, even if there was prejudice, the prejudice was so minimal that any deficiency did not deprive the Petitioner of a fair trial or make the trial results unreliable.

On August 10, 2012, the Petitioner filed a timely notice of appeal.

## ANALYSIS

In this appeal, the Petitioner asserts that he received ineffective assistance of counsel.[2] Specifically, the Petitioner argues that Counsel was ineffective in three respects: (1) Counsel

---

[2] The Petitioner raised numerous other issues in his petition for post-conviction relief, including ineffective assistance of appellate counsel. These issues were dismissed by the post-conviction court and were not raised by the Petitioner in his brief.

failed to call any witnesses at trial, (2) Counsel failed to ask for a mistrial when the District Attorney misstated the cooperating codefendant's plea deal, and (3) Counsel failed to have an investigator search the crime scene for a gun belonging to the surviving victim, Bruno Petrovic. The State responds that the Petitioner failed to prove that Counsel rendered ineffective assistance of counsel, and therefore, the post-conviction court properly denied relief. Upon our review of the record, we agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2012). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694).

This Court has concluded that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The presentation of the witness at the post-conviction hearing is typically the only way for the petitioner to establish:

> (a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case, (b) a known witness was not interviewed, (c) the failure to discover or interview a witness inured to his prejudice, or (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner.

Id. Neither the post-conviction court nor this Court may speculate on "what a witness's testimony might have been if introduced by defense counsel." Id.

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how

best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

The Petitioner first contends that Counsel failed to present a defense, specifically arguing that Counsel failed to present any witnesses on his behalf. In denying relief on this issue, the post-conviction court concluded that Counsel provided the Petitioner with "exceptional representation" and that Counsel fully investigated the case and explored potential defense strategies. The court accredited Counsel's testimony that all defense issues were brought out by the State's witnesses and that any other potential testimony would have hampered the defense. Additionally, the court noted that the Petitioner did not call any of these proposed witnesses to testify at the post-conviction hearing, and it would be "inappropriate" to speculate as to their testimony.

The record does not preponderate against the post-conviction court's findings. The record confirms that Counsel met with the Petitioner more than forty times, interviewed approximately forty witnesses, and hired two investigators and numerous medical experts to help develop options for the Petitioner's defense. Counsel testified that due to the strength of the State's case and the Petitioner's version of events, the defense options were very limited. Counsel was able to negotiate a favorable plea offer on the Petitioner's behalf, but the Petitioner rejected that offer. With regard to Counsel's failure to call witnesses, Counsel testified that no witnesses could have aided the Petitioner's defense or impeached the evidence offered by the State. The Petitioner offered no evidence to the contrary and did not call any such proposed witnesses to testify at the post-conviction hearing. As correctly noted by the post-conviction court, we cannot speculate as to their testimony, see Black, 794 S.W.2d at 757, and therefore, the Petitioner is not entitled to relief.[3]

Next the Petitioner contends that Counsel was ineffective for failing to request a mistrial after the District Attorney misstated the terms of the cooperating codefendant's plea deal. The Petitioner acknowledges that the misstatement was properly corrected but maintains that Counsel should have requested a mistrial because the misstatement could have

_____

[3] In his brief, the Petitioner cites State v. Zimmerman, 823 S.W.2d 220, 227 (Tenn. Crim. App. 1991), for the proposition that the "failure to call the defendant to testify is often a key factor on the issue of ineffective assistance of counsel." The Petitioner did not raise this issue in his petition and did not present evidence on the matter at the post-conviction hearing. "As a general rule, this [C]ourt will not address post-conviction issues that were not raised in the petition or addressed in the trial court." Brown v. State, 928 S.W.2d 453, 357 (Tenn. Crim. App. 1996) (citing State v. Smith, 814 S.W.2d 45, 49 (Tenn. 1991)). Therefore, we decline to address the issue. We note, however, that the evidence in the record supports Counsel's testimony that the Petitioner waived his right to testify.

confused the jury regarding the codefendant's plea deal with the State. Counsel testified that he did not believe that the misstatement provided grounds for a mistrial because it was immediately corrected by both the District Attorney and the trial judge. The post-conviction court rejected the Petitioner's claims and reasoned that once the judge corrected it, there were no grounds upon which to object.

We note at the outset that a trial court should declare a mistrial "only upon a showing of manifest necessity." See State v. Robinson, 146 S.W.3d 469, 494 (Tenn. 2004) (citing State v. Saylor, 117 S.W.3d 239, 250-51 (Tenn. 2003)). "'The purpose for declaring a mistrial is to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict.'" State v. Reid, 164 S.W.3d 286, 341-42 (Tenn. 2005) (quoting State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996)). Like the post-conviction court, we question whether there were any grounds upon which to object considering that the misstatement was immediately corrected by both the State and the trial court. In any event, even if we were to conclude that Counsel's failure to request a mistrial was deficient, the Petitioner has failed to prove that any prejudice resulted. Accordingly, he is not entitled to relief on this issue.

Finally, the Petitioner asserts that Counsel was ineffective because he failed to have an investigator search the crime scene for a gun belonging to the surviving victim, Bruno Petrovic. The Petitioner maintains that because Mr. Petrovic was "known to deal in guns or carry a gun" that Counsel's failure to search the scene for such a gun constituted ineffective assistance of counsel. In rejecting the Petitioner's claims, the post-conviction court noted that Counsel testified that he thought it would be pointless to search for a gun at the scene because the Petitioner told him that Mr. Petrovic did not have a gun.

Upon a review of the record, we cannot agree that Counsel rendered ineffective assistance of counsel given the circumstances. Although the Petitioner correctly asserts that counsel has a duty to investigate and the "failure to conduct a reasonable investigation constitutes deficient performance," see State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999), he fails to put forth any facts to support the conclusion that Counsel's decision was not reasonable. In Strickland v. Washington, the Supreme Court noted:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information . . . [W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to

pursue those investigations may not later be challenged as unreasonable.

Strickland, 466 U.S. at 691. In the present case, the only evidence in the record regarding this matter is the testimony of Counsel, who testified that the Petitioner told him that neither victim had a gun at the scene. Additionally, on cross-examination Counsel testified that the Sheriff's Department searched the scene and did not recover a gun and that Mr. Petrovic testified at trial that he did not have a gun. The Petitioner put forth no other evidence to contradict Counsel's testimony or suggest that Mr. Petrovic had a gun at the scene. The Petitioner gave Counsel ample "reason to believe that pursuing [the gun] would be fruitless." See id. He cannot now challenge that decision as unreasonable. Therefore, we cannot conclude that Counsel's decision to not investigate the matter was unreasonable. This issue is without merit.

## CONCLUSION

Upon our review, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE