IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville October 15, 2013

**ALDRICK LILLARD v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Rutherford County**
**No. F65281     David Bragg, Judge**

**No. M2013-00414-CCA-R3-PC - Filed November 26, 2013**

The Petitioner, Aldrick Lillard, appeals the Rutherford County Circuit Court's denial of post-conviction relief from his convictions for first degree murder, especially aggravated robbery, aggravated burglary, and conspiracy to commit aggravated robbery. On appeal, the Petitioner argues that both his trial attorneys provided ineffective assistance of counsel in their failure to raise in the motion for new trial or on direct appeal the trial court's denial of the Petitioner's motion for mistrial. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and JEFFREY S. BIVINS, JJ., joined.

Benjamin L. Parsley, III, Murfreesboro, Tennessee, for the Petitioner-Appellant, Aldrick Lillard.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and Trevor H. Lynch, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The Petitioner and two co-defendants were indicted by the Rutherford County Grand Jury for first degree murder, felony murder, especially aggravated robbery, especially aggravated burglary, conspiracy to commit especially aggravated burglary, conspiracy to commit especially aggravated robbery, and theft of property in connection with the death of Randy Betts. The theft charge was not presented to the jury and was later dismissed by the State. After a jury trial, the Petitioner was convicted of first degree murder, felony murder,

especially aggravated robbery, aggravated burglary, conspiracy to commit aggravated burglary, and conspiracy to commit aggravated robbery. The trial court merged the felony murder conviction into the first degree murder conviction. The Petitioner received a sentence of life without the possibility of parole for the murder conviction. For the remaining convictions, the trial court sentenced the Petitioner to an effective sentence of twenty-five years, to be served concurrently with the life sentence. The trial court denied the Petitioner's motion for a new trial and on direct appeal, this court affirmed his convictions and sentences. See State v. Aldrick D. Lillard, No. M2008-00575-CCA-R3-CD, 2009 WL 2951270 (Tenn. Crim. App. Sept. 15, 2009), perm. app. denied (Tenn. Mar. 15, 2010).

**Trial.** This court summarized the evidence presented at trial in its opinion:

The victim, Randy Betts, was discovered by his daughter, Brandy Betts, at around 2:00 p.m. on December 20, 2005. Ms. Betts went to her father's home located at 131 Neal Avenue in Smyrna, Tennessee, to assist him with a Christmas tree and found him lying on the floor "with his eyes open and blood all around him." Ms. Betts left the home immediately and went next door to Ed Davis's house.

William David Elliot was next door at Ed Davis's house on December 20, 2005. When Ms. Betts knocked on the door, she asked for assistance in opening her father's front door. Mr. Elliot and Mr. Davis walked next door where they discovered the victim lying on his back on the floor. The victim was clad in a t-shirt and underwear and had what appeared to be a head wound. Mr. Davis walked around the residence to make sure that there was no one else present while Mr. Elliot called 911 and the Sheriff's Department. They waited at the residence until the police arrived.

When the Rutherford County Sheriff's Office arrived on the scene, Ms. Betts, Mr. Elliot, and Mr. Davis were waiting. According to Lieutenant Glenn Morton, the front door of the residence would only open about a foot and a half. Rutherford County EMS workers examined the victim and noted a single gunshot wound to the left side of the neck.

An autopsy revealed that the victim's death was the result of a single gunshot wound to the left side of the neck. Once the bullet entered the body, it traveled from top to bottom and left to right. The bullet settled in the abdomen. There was gun powder stippling on the victim's face and left shoulder that indicated the shooter was two and a half to three feet from the victim at the time of the shooting. According to Dr. Feng Li, Deputy Medical

Examiner for Davidson County, the stippling was consistent with the victim's shoulder being close to his face at the time he was shot. Dr. Li opined that the victim could have been crouched down with his shoulder drawn to his face at the time the shot was fired from above.

During the investigation, the police discovered that the victim had a gun safe in his home. ATF forms indicated that the victim owned a nine-millimeter handgun with the serial number S349. Police also discovered one spent shell casing in the living room near the victim's leg and one in a gray chair to the left of the victim. Both shots appeared to be fired from inside the home. One round hit the victim. Another round traveled through the living room couch, through the wall, and into the backside of a bathroom.

The investigation into Mr. Betts's death was led by Detective Ty Bart Downing of the Rutherford County Sheriff's Department. In conjunction with the investigation, the victim's son discovered that there was activity on the victim's bank card after his death. The purchases were traced to New York Fashion, a store in Hickory Hollow Mall. Detective Downing was able to talk to the manager of the store, who provided a description of a couple who purchased items at the store with the victim's credit card. A female signed the victim's name on the receipt. The female told the manager that the card belonged to her father. One of the transactions occurred on December 20, 2005, at approximately 12:51 p.m., after the victim's death. The card was eventually denied, and the manager claimed that he basically chased the couple out of the mall. The manager of the store wrote down the drivers' license of the female during one of the transactions. The police learned that the drivers' license was listed to Vanessa Claude whose address was listed as 3817 Cricket Lane.

Police went to Ms. Claude's home on December 21, 2005. A male voice initially answered the door, but when police announced their presence, it was met with silence. The door was then answered by Ms. Claude, whose mother then gave permission to search the home for the source of the male voice. [The Petitioner] was hiding behind a door in a bathroom. [The Petitioner] and Ms. Claude were arrested. Police obtained permission to search the rest of the house.

At the home, officers found the jacket that had been purchased from New York Fashion with the victim's credit card and a box of coins that belonged to the victim. Additionally, the police located several of the victim's

credit cards and receipts from shopping excursions. Officers later found the victim's nine millimeter handgun with the serial number S349 under Ms. Claude's bed. Additionally, they recovered a .50 caliber rifle and several other rifles wrapped in a blanket.

[The Petitioner] and Ms. Claude were interviewed several times by the police. During the first interview, [the Petitioner] informed the police that he was dating Ms. Claude and living "off and on" at her house. At first, [the Petitioner] claimed that he and Ms. Claude were probably at home all day on December 19 and 20, 2005. Later, however, [the Petitioner] admitted that he and Ms. Claude bought the coat that officers found in Ms. Claude's home. [The Petitioner] denied any knowledge that the credit card used to purchase the coat was stolen. After being informed that the credit card was stolen, [the Petitioner] later admitted that he bought some "hot" items from a man in Nashville whose name started with an "L." He described the man as heavyset with braids. The items included some handguns and were in a bag that could have also contained credit cards. [The Petitioner] told police that he paid $200 for a .357 chrome gun with a black handle, a semi-automatic weapon, and a brown shotgun. [The Petitioner] told police that the guns were under the bed at Ms. Claude's house.

[The Petitioner] informed police that he had never met the victim, did not break into the victim's home, and did not kill the victim. [The Petitioner] tried to tell police that "L" was probably responsible for the robbery of the victim.

Later, [the Petitioner] admitted during an interview that he had been at the victim's house for the purpose of getting guns. [The Petitioner] remembered that the victim opened the door wearing shorts or boxers. According to one version of the story told by [the Petitioner] to police, "L" and the victim went to the back of the house to smoke crack. When they returned, "L" placed a gun to the back of the victim's head. There was a struggle, and shots were fired. Despite his description of the events, [the Petitioner] claimed that he did not see "L" shoot the victim.

At first, [the Petitioner] claimed that the victim was unarmed. Subsequently, [the Petitioner] claimed that the victim was armed with a silver .357 revolver with a black handle when he opened the door. [The Petitioner] also claimed that "L" fired a weapon two or three times in self-defense and that at least one of the shots hit the victim in the upper chest. [The Petitioner]

told police he was on the porch at the time the victim was shot but helped "L" get a bag of guns from the house. [The Petitioner] claimed to police that he saw "L" take a "big ass rifle" from the victim's house. "L" instructed [the Petitioner] to hold onto it so [the Petitioner] put the gun under a bed at Ms. Claude's house. The guns also included the revolver that the victim had when he opened the door. [The Petitioner] admitted that he handled this weapon. According to [the Petitioner], Ms. Claude drove the van to the victim's house.

During a subsequent interview, [the Petitioner] identified a person he claimed to be "L" in a photographic lineup. Detective Downing determined that the man identified by [the Petitioner] could not have been with [the Petitioner] at the victim's apartment.

After interviewing [the Petitioner], Ronald Allen Hardy also became a suspect in the crime. Police received information that the nine millimeter handgun used to shoot the victim was recovered during a traffic stop in Davidson County from Mr. Hardy's brother Yuri Hardy. The gun was actually stolen from the home of Detective Mike Chastain of the Metro Nashville Police Department. [The Petitioner] was presented with a photographic lineup that contained a picture of Mr. Hardy. [The Petitioner] denied knowing Mr. Hardy even though police were already aware that the two men knew each other. Mr. Hardy did not match the description of "L."

In his final interview with police, [the Petitioner] admitted that he knew Mr. Hardy[1] and that Mr. Hardy and Ms. Claude were also at the victim's house the day of the incident. He maintained that he was not the shooter but admitted that he had also taken a box of coins from the victim.

According to Detective Downing, [the Petitioner] changed his story multiple times during the three interviews that were conducted. Detective Downing described [the Petitioner]'s statements as deceptive but recalled that by the end of the second interview [the Petitioner] had implicated himself in the robbery.

Detective Downing opined that the robbery was planned by Mr. Hardy, [the Petitioner], and Ms. Claude as an attempt to steal guns from the victim. After examining the evidence, Detective Downing felt that the first shot that

---

[1] In a separate interview that was not played for the jury, [the Petitioner] admitted that he and Mr. Hardy stole the nine-millimeter from Detective Chastain's house.

was fired probably hit the couch. As a natural reaction, the victim ducked and attempted to cover his face. While the victim was crouched down, the second shot was fired, hitting the victim in the neck and traveling to his abdomen.

Aldrick D. Lillard, 2009 WL 2951270, at *1-4.

On September 22, 2009, the Petitioner filed a timely pro se petition for post-conviction relief, for which the post-conviction court appointed counsel on October 4, 2010. On March 3, 2011, post-conviction counsel filed an amended petition alleging ineffective assistance of counsel on various grounds. After an evidentiary hearing on April 27, 2011, the post-conviction court merged the Petitioner's two conspiracy convictions, but otherwise denied relief. See Aldrick D. Lillard v. State, No. M2011-01380-CCA-R3-PC, 2012 WL 4479275 (Tenn. Crim. App. Sept. 27, 2012). The Petitioner then timely appealed the denial of post-conviction relief to this court. See id. This court described the pertinent evidence presented at the April 27, 2011 hearing in its opinion:

Lead counsel testified that he did request a mistrial during the Petitioner's trial after the prosecution made statements to the jury during its opening statement that detailed the Petitioner's connection to a prior, uncharged burglary of a Nashville police officer, Detective Chastain. The motion was later denied in chambers without a court reporter present. Lead counsel explained that "anything about the Nashville burglary, we wanted to keep out of evidence as much as possible." Lead counsel testified that he believed he had grounds for a mistrial based on "a reference to other criminal activity." Post-conviction counsel questioned lead counsel about his failure to raise that issue on appeal or in the motion for new trial in light of his belief that he had sufficient grounds. Lead counsel testified that he did not raise the issue on appeal for the following reasons: (1) the murder weapon in the instant case was the same weapon stolen from a Nashville police officer during a burglary; (2) the Petitioner "was wearing the police officer's ring at the time he got arrested in this particular case"; and (3) "the judge ruled that . . . they could make that connection to the gun." However, lead counsel conceded that the issue could have still been raised on appeal.

Shortly thereafter, the prosecutor objected and requested that post-conviction counsel indicate where that issue was alleged in the petition. Post-conviction counsel argued that it was included in the Petitioner's pro se "petition marked under 'other.'" The prosecutor argued that he was entitled to notice of what "other" actually references and that "you have to specify and clarify what those other grounds are." The post-conviction court agreed. Post-

-6-

conviction counsel then "move[d] for an amendment to the petition based upon what [he and lead counsel] discussing in the way that the record shows." However, because the issue was not specifically raised in the original or amended petition, the court sustained the prosecution's objection and noted post-conviction counsel's objection for the record.

Id. at *6-7 (footnote omitted). Citing Rule 28, section 8(D)(5) of the Tennessee Supreme Court Rules, a majority of this court concluded that the post-conviction court erred in denying the Petitioner's motion to amend his petition during the hearing.[2] Specifically, the Petitioner was prevented from questioning his trial attorneys regarding their failure to raise the trial court's denial of his request for a mistrial as an issue in the motion for a new trial and on direct appeal. The majority reversed the ruling of the post-conviction court prohibiting the Petitioner to amend his petition and remanded the matter for further proceedings. The majority held:

> This remand is limited to the specific issue encompassing ineffective assistance of appellate counsel due to the failure to allege in the motion for new trial, or raise on direct appeal, the trial court's denial of the Petitioner's motion for mistrial based on the admission of impermissible character evidence regarding prior, uncharged bad acts during the prosecution's opening statement.

Id. at *17. A new evidentiary hearing on this limited issue was held on January 23, 2013. The Petitioner and both his trial attorneys testified at the hearing.

**January 23, 2013 Post-Conviction Hearing.** Lead counsel testified that he and co-counsel tried the Petitioner's case together, with lead counsel doing most of the trial work.[3]

---

[2] Rule 28, section 8(D) governing post-conviction hearings states in pertinent part:

(5) If evidence is objected to on the basis that it concerns issues not raised in the petition or answer, the court may allow amendments and shall do so freely when the presentation of the merits of the cause will otherwise be subserved. The court shall liberally allow a continuance in the event an amendment is allowed to enable the objecting party to meet the evidence.

Tenn. Sup. Ct. R. 28 § 8(D)(5).

[3] As this court previously noted:

Lead counsel also explained that he "could be characterized as lead counsel in the

(continued...)

Lead counsel explained that he made a motion for mistrial during the State's opening statement because the prosecutor made references to a prior, uncharged burglary connecting the Petitioner to the murder weapon.[4] The offense (hereinafter the "Nashville burglary") involved the theft of a nine millimeter handgun from the home of Detective Mike Chastain of the Metro Nashville Police Department.[5] According to lead counsel, there had been confusion in the case because a different judge ruled on pretrial motions than the judge who presided over the trial.[6] Lead counsel said he had raised a motion regarding the extent that the State would be permitted to refer to the Nashville burglary and there had been an in-chambers conversation that morning regarding the issue. No court reporter was present. Lead counsel did not believe that there had been a clear ruling on the admissibility of the Nashville burglary so he objected and requested a mistrial during the State's opening statement. Out of the presence of the jury, the trial court denied his motion for mistrial.

---

[3](...continued)
Petitioner's case" because he "had extensive jury trial experience[.]" Therefore, he "handled the trial end of it," and co-counsel "handled the appellate end of it." Lead counsel testified that co-counsel wrote the brief, which he had some input on, and that he did not recall having any additional contact with the Petitioner after the trial.

Aldrick D. Lillard, 2012 WL 4479275, at *5.

[4] The Petitioner objected to the following remarks of the prosecutor during his opening statement:

Ladies and gentlemen, there was a murder weapon, and that murder weapon was recovered. You will find that murder weapon was recovered from Hardy's brother. A Metro police officer, Detective Mike Chastain, owned that murder weapon. That weapon came from him, from a burglary that occurred in Nashville weeks before.

Ronallen Hardy and Aldrick Lillard were interviewed. Aldrick Lillard admitted to being with Ronallen Hardy during that burglary, admitted and told detectives how they broke into this detective's home, how they broke into his gun safe, how they took his guns.

[5] The Petitioner has previously admitted in a taped police interview, as well as to the post-conviction court, that he and his co-defendant, Ronallen Hardy, were involved in a burglary of Detective Chastain's home. As this court noted, during the Petitioner's previous testimony to the post-conviction court, "the Petitioner admitted that he participated in the uncharged Nashville burglary involving Det. Chastain. He also admitted that, when arrested on the instant charges, he was found in possession of some of Det. Chastain's property stolen during that Nashville burglary." Aldrick D. Lillard, 2012 WL 4479275, at *10.

[6] Lead counsel raised this particular issue and objected on the record at trial, in the motion for a new trial, and on direct appeal. See Aldrick D. Lillard, 2009 WL 2951270.

Lead counsel did not recall that the trial court provided a curative instruction to the jury after the denial of mistrial.

Lead counsel said co-counsel prepared the motion for new trial. He said he discussed the issues pertaining to the motion with co-counsel and with the Petitioner. Lead counsel did not recall whether the denial of the motion for mistrial was discussed. He considered the issue of the reference to the Nashville burglary to be moot because it was eventually permitted to come into evidence. He said it was his general practice to ask defendants if there was anything else they would like to include in the motion for new trial. Lead counsel testified that co-counsel predominately wrote the appellate brief, with input from lead counsel. In his perspective, the issue pertaining to the denial of the mistrial was included in the motion for new trial.[7] Lead counsel acknowledged that the denial for motion for mistrial was not specifically addressed, but he maintained the issue was included. The motion for new trial was entered into evidence without objection.

On cross-examination, lead counsel agreed that after the opening statement, the issue of the murder weapon came up again as the trial progressed. After considering the proof in a jury-out hearing, the court allowed into evidence the Petitioner's admission that he and Ronallen Hardy stole the weapon from Detective Chastain. Lead counsel stated that he had initially objected to the opening statement because there had been no clear ruling from the trial court regarding the admissibility of the Nashville burglary. However, as the trial proceeded, "the [t]rial [c]ourt allowed that information to come in, which made the original objection a moot point."

Co-counsel testified that he had a more limited role in the Petitioner's trial. He was there to discuss the case and the defense theories with lead counsel, and he met with the Petitioner several times. According to co-counsel, it was a huge and important case. He did not recall much about the reference to the Nashville burglary in the State's opening statement because it did not seem like a big deal at the time. Co-counsel said he took notes during the

---

[7] The third ground in the Petitioner's motion for new trial alleges:

There was a separate judge to rule on the pre-trial motions other than the trial judge. This unnecessarily complicated the matter of the [Petitioner]'s case whereas, the trial judge did not have the opportunity to rule on pre-trial motions, which in turn had a significant effect on the outcome of the trial which he was to preside over. Counsel raised this issue and objected on the record. Counsel's objection was overruled.

On direct appeal, this court held that the Petitioner waived this issue for failure to cite to authority. See Aldrick D. Lillard, 2012 WL 4479275, at *5.

trial and referred to them when preparing the motion for new trial and the appellate brief. He did not recall discussing with the Petitioner the issues to include in the motion for new trial. He also did not remember specifically discussing with lead counsel or the Petitioner the issue of the denial of the motion for mistrial. Co-counsel said he drafted the motion for new trial and sent it to lead counsel. It was his understanding that lead counsel would discuss the motion with the Petitioner. He stated that the Nashville burglary was "troublesome" to the defense and they "certainly didn't want it in." However, "it was obvious the [p]rosecution was going to get it in, because it was the murder weapon." Co-counsel testified that he drafted the motion for new trial in 2007 and he could not recall why the denial of the mistrial was not specifically included. He said that at the time, "there were so many other issues that were much more important that garnered [their] attention[.]" Co-counsel concurred with lead counsel that it was problematic that different judges heard the pretrial motions and presided over the trial. Co-counsel did not include the denial of the request for mistrial in the appellate brief because the issue "seemed to have been resolved by the trial." He stated that though it is proper procedure to address all possible issues on appeal, based on his reading of appellate cases, he did not consider objections to opening or closing statements to be a meritorious issue for appeal.

On cross-examination, co-counsel said he had participated in less than ten criminal jury trials at the time of the Petitioner's case. He was familiar with the specific jury instruction in criminal trials that statements and arguments of counsel are not evidence. According to co-counsel, this curative instruction was given by the trial court to the jury in the Petitioner's case. Co-counsel said the evidence presented to the jury included the Petitioner's admission that he and Ronallen Hardy stole the weapon from Detective Chastain's home.

The Petitioner testified that he did not recall lead counsel or co-counsel discussing with him anything pertaining to the motion for new trial. He said his trial attorneys did not discuss with him what issues could be brought on appeal. The relevant portion of the prosecutor's opening statement at trial was entered into evidence without objection.

At the conclusion of the post-conviction hearing, the court took the matter under advisement. On January 29, 2013, the court entered its written order denying post-conviction relief. In it, the court made the following determinations:

> Based on the testimony and the record, the Court finds no prejudice that would undermine the jury's verdict. The jury was instructed that statements of counsel are not evidence and are only intended to assist their understanding. The trial judge subsequently allowed the evidence linking the Petitioner, the burglary and the murder weapon to be admissible, and his ruling was not

-10-

contested on direct appeal. The Court cannot find that the denial of the motion for mistrial was prejudicial to Petitioner or that the failure to include the denial in the motion for a new trial and the initial appeal would support a claim for ineffective assistance of counsel.

It is from this order that the Petitioner timely appeals.

**ANALYSIS**

The Petitioner argues that his trial attorneys were ineffective for failing to allege in the motion for new trial or on direct appeal the trial court's denial of the Petitioner's motion for mistrial based on the trial prosecutor's opening statement in reference to the Nashville burglary. In response, the State argues that the post-conviction court properly denied relief because the Petitioner failed to prove that he received ineffective assistance of counsel. We agree that the Petitioner is not entitled to relief.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

In denying the Petitioner his requested relief, the post-conviction court specifically found that the Petitioner failed to establish prejudice in support of his claim for ineffective

assistance of counsel. In <u>Strickland</u>, the United States Supreme Court noted that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697; <u>see also</u> <u>Goad</u>, 938 S.W.2d at 370. After considering the amended petition on remand, the testimony at the evidentiary hearing, the trial transcript, and the record as a whole, the post-conviction court did not find prejudice that would undermine the jury verdict in the Petitioner's trial. The court noted that the jury received a curative instruction that the statements of counsel are not evidence. <u>See, e.g.</u>, <u>State v. Banks</u>, 271 S.W.3d 90, 137 (Tenn. 2008) (holding that juries are presumed to follow the trial court's curative instructions). Furthermore, the trial court ultimately admitted the evidence linking the Petitioner to the Nashville burglary and to the murder weapon. We agree that the Petitioner has failed to meet his burden in demonstrating that the omission of the trial court's denial of the requested mistrial prejudiced the defense or that the outcome of the proceedings would have been different.

Here, the proof at trial and on appeal showed that the trial court eventually allowed the Nashville burglary into evidence after a jury-out hearing. The evidence was admitted to connect the Petitioner to the murder weapon. Therefore, the jury was allowed to consider the Petitioner's admission that he and his co-defendant were involved in the burglary of Detective Chastain's home. The Petitioner did not challenge this evidentiary admission in his appeal. Furthermore, this court considered the sufficiency of the evidence on direct appeal and affirmed the Petitioner's convictions. <u>See</u> <u>Aldrick D. Lillard</u>, 2009 WL 2951270. We note that the grant or denial of a motion for a mistrial rests within the sound discretion of the trial court. <u>State v. Robinson</u>, 146 S.W.3d 469, 494 (Tenn. 2004). A trial court should declare a mistrial "only upon a showing of manifest necessity." <u>Id.</u> (citing <u>State v. Saylor</u>, 117 S.W.3d 239, 250-51 (Tenn. 2003)). "The purpose for declaring a mistrial is to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict." <u>State v. Reid</u>, 164 S.W.3d 286, 341-42 (Tenn. 2005) (citing <u>State v.</u> <u>Williams</u>, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996)). The party seeking a mistrial has "the burden of establishing the necessity of a mistrial." <u>Id.</u> at 342 (citing <u>Williams</u>, 929 S.W.2d at 388). Based on the record, we cannot conclude that the verdict in the Petitioner's trial was undermined or that the proceedings were fundamentally unfair because of the trial attorneys' failure to raise the denial of the requested mistrial in the motion for new trial or on appeal. <u>See</u> <u>Strickland</u>, 466 U.S. at 670 ("[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged."). Given the substantial proof of the Petitioner's guilt, there is serious doubt that raising the denial of the requested mistrial would have changed the outcome for the Petitioner. <u>See</u> <u>Hicks</u>, 983 S.W.2d at 245. Because the trial court subsequently admitted the Nashville burglary into evidence, we conclude that the prosecutor's statement regarding the Petitioner's involvement did not give rise to a "manifest necessity" requiring a mistrial. Accordingly, the record

supports the finding of the post-conviction court that the Petitioner failed to establish by clear and convincing evidence that trial counsel was ineffective regarding this issue.

Although not specifically addressed by the post-conviction court, we conclude that the Petitioner has also failed to demonstrate that lead counsel and co-counsel performed deficiently or unprofessionally in omitting the denial of the motion for mistrial in the motion for new trial or on appeal. In support of his claim for ineffective assistance of counsel, the Petitioner asserts that the failure to raise the denial of the motion for mistrial is clear and convincing evidence that his attorneys' conduct fell below "an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). We respectfully disagree. Lead counsel testified that when he requested a mistrial based on the prosecutor's statements regarding the Nashville burglary, he did not believe that there had been a clear ruling on the admissibility of such evidence. However, he considered the issue to be moot because the trial court eventually allowed into evidence the Petitioner's admission that he and Ronallen Hardy stole the weapon from Detective Chastain. Co-counsel testified that although the Nashville burglary was "troublesome" and they would have preferred the matter to be inadmissible, "it was obvious the [p]rosecution was going to get it in, because it was the murder weapon." When drafting the motion for new trial and writing the appellate brief, co-counsel said that there were many other important issues that garnered his attention and the issue of the denial of the requested mistrial "seemed to have been resolved by the trial." Given the deference owed to the professional judgment and strategic decisions of counsel, we cannot conclude that lead counsel and co-counsel performed deficiently in failing to raise an issue that they deemed to be moot and without merit. See State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689); see also Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993) ("[T]here is no constitutional requirement that an attorney argue every issue on appeal. . . .Generally, the determination of which issues to present on appeal is a matter which addresses itself to the professional judgment and sound discretion of appellate counsel.").

On remand, the post-conviction court specifically considered the amended petition and the evidence concerning a claim for ineffective assistance of counsel based on the failure of the trial attorneys to raise the denial of the motion for mistrial in the motion for new trial or on direct appeal. After considering the testimony, the amended petition, and the record as a whole, the post-conviction court denied the Petitioner's requested relief, finding that the Petitioner was not prejudiced at trial. Nothing in the record preponderates against the court's ruling. Accordingly, the Petitioner's issue is without merit, and he is not entitled to relief.

## CONCLUSION

Upon review, we conclude that the Petitioner has failed to prove by clear and convincing evidence that he received ineffective assistance of counsel. The judgment of the post-conviction court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE